**PENDELL v. APODACA et al. (No. 1117.)**

(Court of Civil Appeals of Texas. El Paso. April 22, 1920.)

1. **Wills 🗝158—Acts of undue influence need not be exercised at time of execution of will.**

It is not necessary that overt acts of undue influence be exercised at the time of the execution of a will, and it is sufficient that undue influence has been exercised previously and operated at the time the will was executed.

2. **Appeal and error 🗝1001(1) — Test of whether verdict is supported by evidence stated.**

If, discarding all adverse evidence and giving credit to all evidence favorable to plaintiff, and indulging every legitimate conclusion favorable to him which might have been drawn from the facts proved, a jury might have found in his favor, there is evidence to support the verdict when challenged on appeal.

3. **Wills 🗝166(3)—Evidence held to support verdict finding undue influence.**

Evidence *held* sufficient to support a verdict finding that a will was the result of undue influence exercised by the man with whom testatrix was living in adultery.

4. **Wills 🗝166(12)—Fraud and undue influence provable by circumstantial evidence.**

In a will contest, fraud and undue influence may be proved by circumstantial evidence.

Appeal from District Court, El Paso County; P. R. Price, Judge.

Application by George Pendell to probate the will of Sofia Apodaca, contested by Sabina Apodaca and others. On appeal to the district court judgment was entered for the contestants, and the proponent appeals. Affirmed.

Dyer, Croom & Jones, of El Paso, for appellant.

Lea, McGrady, Thomason & Edwards, of El Paso, for appellee.

HARPER, C. J. This action involves the contest of a will arising upon application to probate same.

Sofia Apodaca on January 11, 1919, executed her will, giving all of her property, except the sum of $1 each to contestants, to George Pendell. At the March term, 1919, the latter filed his application to probate said will.

The appellees, brothers and sisters of deceased, filed their contest on the grounds that deceased at the time of signing of same was not of sound mind; that it was procured by fraud, undue influence, and unlawful means on the part of said Pendell and others acting for and in his behalf. The county judge admitted the will to probate. The contestants appealed to the district court, and there tried to a jury upon special issues, and upon the findings judgment was entered decreeing that the writing offered was not the will of said Sofia Apodaca, deceased, and was not executed under the circumstances required by law to make it a valid will, and was wholly void and invalid, and the former order probating same set aside. From which it comes here upon appeal.

[1] The jury found as a fact that the deceased was procured to execute the will by undue influence, and appellant urges by two assignments that this finding is contrary to and unsupported by the manifest weight of the evidence, and that there was no evidence that undue influence was exercised upon the very act of making the will. No finding of the jury to that effect, which is essential before a will otherwise valid can be set aside. As to the latter, it is not necessary to show that the overt acts of undue influence were exercised at the time of the execution of the will, but it is sufficient that it had been exercised previously and operated at the time the will was executed. Rounds v. Coleman, 214 S. W. 496.

[2] This brings us to the only other question presented, to wit: Is the evidence sufficient to support the verdict of the jury to the effect that the will was procured to be executed through undue influence? The test as to the probative force of evidence to be applied by appellate courts is announced to be:

"If, discarding all adverse evidence and giving credit to all evidence favorable to the plaintiff and indulging every legitimate conclusion favorable to plaintiff which might have been from the facts proved, a jury might have found in his favor, then there is evidence to support their verdict." Cartwright v. Canode, 106 Tex. 507, 171 S. W. 696.

The undisputed evidence is to the effect that appellant, a married man, had been living in adultery with the deceased for several years.

[3] On January 2, 1919, she was taken to the hospital seriously sick, an operation was decided upon, and the surgeon made an incision or opening and found conditions such, cancer, as not to warrant proceeding further, and it was closed up, and from that on was relieved of pain by administering morphine daily until her death. The will sought to be probated was executed January 11, 1919, under the following circumstances, as described by the attorney:

"C. S. T. Folsom testified that he had been practicing law in El Paso for five years and had known George Pendell, the proponent of the will, for said length of time. That said witness saw the deceased once in her lifetime at the Providence Hospital, which was the day the will was executed by her; that he prepared the will at the request of George Pendell before he had seen Sofia Apodaca, and after preparing it took it to the Providence Hospital to see her; that he showed it to her and explained it to her and that she signed the will there; that Mrs. G. B. Landrum and Fernando Mendoza signed the will at the request of Mrs. Apodaca; that the condition of the mind of Mrs. Apodaca at that time was good; that the witness prepared the will about 11:30 or 12 in the morning and took it to the hospital at 1 o'clock; that Mr. Pendell came to his office and gave him a list of the property at that time and told the witness to make out the will, and at that time he had had no conversation with her. 'I took my instructions entirely from George Pendell. I did not know what her wishes were except what George told me. * * * I went into the room with him and had the will in my hand. The will was written in English. I did not talk English to her. When I went into the room she was looking down. She was not practically unconscious. She died the next day; my recollection is on the 12th, the day following. The nurse, Mrs. Landrum, was in the room at that time and Dr. Bruner just came out. Fernando Mendoza went in there with Mr. Pendell. * * * I walked up to the bed and told her I had the will and told her it was a will leaving all of her property, except $1 to each of her brothers and sisters, to Mr. Pendell, and asked her if that was the sort of a will she wanted and she said it was. I made a concise statement of the will to her. I did not read the will to her word for word. I think the nurse and I held her up when she signed the will. She was not so sick and weak she could not see anybody. She talked very intelligently. I explained to her what the will was and asked her if it was what sne wanted to do and she said it was. I said apparently it was necessary to have three witnesses, since it was required to be probated in Old Mexico, and the law there required three witnesses, and she said yes, she knew that. She was very clear, mentally. * * * George Pendell was with me at the time. I think he was standing over there looking out at the window; turned his back while the will was being signed. I would not be positive that he did not come up to the bed. * * * I talked to her in Mexican. I talk Mexican just about as well as English. The explanation I made to her was in her native tongue.'"

Some of these statements of the attorney are in a sense disputed by other witnesses present at the time the will was signed. The testimony is conflicting as to the condition of her mind at the time, but, the jury having found that she was of sound mind, it becomes unnecessary to quote the evidence in this respect.

Mendoza, one of the subscribing witnesses, who was an employé of appellant, and was taken to the hospital by him for the purpose of signing as a witness, testified as follows:

"Nobody read the will to her; she refused to have it read to her; just said that whatever the will read was all right to her. She asked Mr. Folsom 'Who are you?' and he answered, 'I am the attorney for Mr. Pendell.' I heard no other conversation between the two; just a very little about her sickness and things that didn't amount to much.

"I knew the relationship between George Pendell and Mrs. Apodaca because I lived in the house. They lived together in adultery; he supported her and paid the expenses of the house. She did whatever he wanted her to do. She authorized him to do just as he pleased. At times I have seen him make her do things she did not want to do.

"I never heard her say a word about not giving her brothers and sisters anything. Mr. Pendell was to be the guardian of her property on both sides of the river."

The will, after giving $1 to each of her brothers and sisters, leaves the entire remainder of the property to George Pendell, consisting of many lots with improvements in El Paso, Tex.

[4] It is, of course, well settled that fraud and undue influence may be proved by circumstantial evidence, and there are strong circumstances in this evidence to indicate that undue influence was exercised, and also to strongly indicate that the testator did not in fact know the contents of the paper when she signed it. First, five or six years adulterous relationship; second, none of her brothers or sisters or other relatives ever heard her say anything about leaving her property to appellant, but testified that she asked them if it would be all right to leave him guardian of her property; third, the paper was drawn up at the dictation of appellant by his attorney; fourth, appellant present with his hired hand on the execution thereof; fifth, the paper not read by her nor fully read to her by the attorney; sixth, her physical condition at the time of its execution, she having died the second day thereafter, etc.—are of the strongest probative force, and are unquestionably sufficient to support the verdict of the jury. Goodloe v. Goodloe, 47 Tex. Civ. App. 493, 105 S. W. 533; Leahy v. Timon, 204 S. W. 1029.

Affirmed.