**REINHARDT v. NEHRING et al.**
(No. 6939.)

(Court of Civil Appeals of Texas. Austin. April 14, 1926. Rehearing Denied May 5, 1926.)

1. **Wills ⚖⇒21, 155(1).**

Mental incapacity or undue influence as annulling will depends on particular facts of each case as applied to general principles of law.

2. **Wills ⚖⇒324(2, 3)—Mental incapacity and undue influence are issues of fact for jury, precluding court withdrawing case, unless evidence is such that reasonable minds may not differ.**

Mental incapacity and undue influence are issues of fact for jury, precluding court withdrawing case, unless evidence is of such nature that reasonable minds may not differ thereon.

3. **Wills ⚖⇒384—Court must consider testimony favorable to verdict in determining whether jury's verdict, annulling will because of mental incapacity or undue influence was sustained by evidence.**

In determining whether jury's verdict, annulling will because of mental incapacity or undue influence, is sustained by evidence, court must consider testimony most favorable to verdict disregarding conflicts, contradictions, and all adverse evidence.

4. **Wills ⚖⇒164(3)—Undue influence in execution of will may be proved by circumstances, and jury may consider unjust and discriminatory provisions therein as between children.**

Undue influence, in execution of will, may be proved by circumstances, and jury may con-

sider fact that will contains unjust and discriminatory provisions as between children, or that it is devoid of natural duty of affection.

**5. Wills ⚷═55(1), 166(1)—Evidence held to show mental incapacity and undue influence in execution of will.**

Evidence *held* sufficient to support verdict that testatrix at time of making will was mentally incapacitated, and that undue influence was exercised.

**6. Wills ⚷═329(3)—Charge on issue of mental incapacity that, before will could be admitted to probate, it must be proved to jury's satisfaction that testatrix was of sound mind, and that burden of proof was on proponent, held proper (Rev. St. 1911, arts. 3271, 3272).**

Under Rev. St. 1911, art. 3271, as construed in connection with article 3272, charge on issue of mental incapacity that, before will could be admitted to probate, it must be proved to satisfaction of jury that testatrix was of sound mind, and that burden of proof was on proponent, *held* proper as being in the language of the statute.

**7. Wills ⚷═54(3), 165(5)—Admitting, in will contest, declarations of testatrix to effect that she had told neighbors she was going to treat all her children alike, and asking advice about property, held proper as tending to show undue influence and mental incapacity because of having no knowledge of previously making will.**

In will contest on ground of mental incapacity and undue influence, admitting evidence of declarations of testatrix to effect that she had never made will, and that she had sought advice about property and had not mentioned about executing will, *held* proper as showing undue influence and condition of her mind.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Application by Emil Reinhardt for the probate of the will of Henrietta Prinz, deceased. From a decree in favor of the contestants, Mrs. Emma Nehring and others, denying the probate, proponent appeals. Affirmed.

E. R. Pedigo and Chas. L. Black, both of Austin, for appellant.
Dickens & Dickens, of Austin, for appellees.

BLAIR, J. Henrietta Prinz died March 28, 1923, and shortly thereafter appellant filed his application to probate certain instruments as her last will and codicil thereto. His application was contested by appellees upon the grounds that she was not of sound or disposing mind at the time the will and codicil were executed; that she was induced to execute the will through the undue influence of her husband, Wilhelm Prinz; and that she was induced to execute the codicil through the undue influence of her daughter Helena Reinhardt and her husband, the appellant.

The jury found in answer to special issues that she was of unsound mind at the time she executed the will March 17, 1905; that she was of unsound mind at the time she executed the codicil thereto December 14, 1917; and that she was caused to execute the will March 17, 1905, by reason of the undue influence of her husband, Wilhelm Prinz. Judgment was rendered on the jury's verdict, denying the probate of the will.

In the main appellant attacks the verdict and judgment for insufficiency of the evidence to sustain them. We are of the opinion that the evidence supports them, and affirm the judgment.

[1-4] The general principles of law relating to the effect and meaning of mental incapacity and of undue influence as annulling a will are well settled and are not in dispute in this case. What constitutes mental incapacity or undue influence depends on the particular facts of each case as applied to the general principles of law. Cartwright v. Canode, 171 S. W. 696, 106 Tex. 502; Stolle v. Kanetzky (Tex. Civ. App.) 259 S. W. 657. Mental incapacity and undue influence being issues of fact, the court was not authorized to withdraw the case from the jury, unless the evidence is of such nature that reasonable minds may not differ as to it. Cartwright v. Canode, supra; Kirksey v. Traction Co., 217 S. W. 139, 110 Tex. 190. In determining whether a jury's verdict annulling a will because of mental incapacity to execute it, or because executed through undue influence, is sustained by the evidence, the court must consider the testimony most favorable to the verdict, disregarding conflicts, contradictions, and all adverse evidence. Stolle v. Kanetzky, supra. Other tests applicable here are that undue influence may be proved by circumstances, and that the jury may consider, along with other circumstances, the fact that the will contains unjust and discriminatory provisions as between testatrix's children, or that it is devoid of natural duty of affection. Gallagher v. Meilon (Tex. Civ. App.) 121 S. W. 564; In re Linstrom's Will (Iowa) 175 N. W. 741; Holt v. Guerguin (Tex. Civ. App.) 156 S. W. 583; Rounds v. Coleman (Tex. Civ. App.) 214 S. W. 496; Johnson v. Shaver, 172 N. W. 676, 41 S. D. 585; Clark v. Briley (Tex. Civ. App.) 193 S. W. 419; 1 Schouler on Wills, 91. Apply these tests to the evidence adduced in this case, and it will be found to sufficiently support the jury's verdict.

The evidence shows that testatrix's first husband, Fritz Prinz, died in 1883; and in 1884 she married his brother, William, or "Wilhelm," Prinz, who died in 1917. Appellees Mrs. Berger, Mrs. Menn, and Mrs. Nehring, are the only children of testatrix's first marriage. Mrs. Reinhardt, wife of appellant, is the only surviving child of the testatrix's second marriage. An idiotic child of the last marriage died when about 15 years of age. Wilhelm Prinz owned no property when he married testatrix. She owned her interest in

203 acres of land in Travis county, and considerable personal property constituting the community estate of the first marriage. By her will the second husband was given a life estate in all of testatrix's property, and the fee of it was devised to Mrs. Reinhardt, daughter of the last marriage, and wife of appellant. To each of the daughters of the first marriage she bequeathed the sum of $25. The codicil made no change in the will, except to appoint appellant executor in the place of Wilhelm Prinz, deceased. The estate is of the probable value of $8,000.

The three daughters of the first marriage and the one of the second marriage were alike dutiful and kind to their mother, remaining at home until their respective marriages, and each visiting their mother until her death. There were no differences between testatrix and either of the four daughters. Shortly before her death she expressed her love for each of them, and stated that she "was going to treat them all alike," with reference to her property. The three elder daughters worked in the field and helped generally to accumulate the property here involved. No excuse is shown why she should make the distinction she did as between them. Neither of the three elder daughters nor their husbands knew of the will in question or the codicil until after their mother's death. The younger daughter knew of it. It is shown by many witnesses that soon after Wilhelm Prinz married testatrix he began to drink excessively and to mistreat his wife. He was domineering and exacting in his dealings with her, and she apparently obeyed his every command. He kept many dogs and required her to attend to them, and to let them sleep in bed with her. A hired hand on the place testified:

"With reference to whether William Prinz drank much or little, I will state that the last time I was there I was with a man named Shelton, and we stayed all night, and there was a jug of whisky on one end of the bed and some beer on the other end. The dogs were there on the bed, between the jug and the keg, and the old lady was lying there sleeping. I saw the dogs there in the bed with my own eyes. * * * I worked on the place and I knew Mrs. Prinz well. I do not believe she had much of a mind; she was a little weak-minded, because you could make her believe almost anything; anything that he would say she would believe it. I know what a strong mind is, and I know when a person hasn't got his right mind. As to whether he called her any improper names, he said to me, 'Let me show you my old slouch, where she is sleeping.' That was the time he showed me the dogs in the bed."

Another witness testified:

"I knew both Fritz and William Prinz. I also knew Mrs. Henrietta Prinz. I used to run a shop at Dessau, and stayed out there for 2 or 3 years. I saw Mrs. Prinz right often at that time. I did not have any business dealings with her, but would just been in her company at times. I couldn't say that Mrs. Prinz was weak-minded, but she was dull in that she could be easily influenced."

A brother of testatrix's two husbands testified:

"As to her mental condition, I will say that she was a woman easily influenced."

Mrs. Frances Prinz, a sister-in-law to testatrix's husbands, and who had known her for 43 years, testified:

"I know that her last husband, William Prinz, drank a good deal. I have been at their house when he was drinking and saw the way he was. He got mad at one time when she was crippled and sick in bed on account of having been hurt by a cow. At first he was good and kind to his wife, but he got to drinking too much and then he got rough with her. As to whether Mrs. Prinz was a woman of sound mind or whether she was weak-minded, she wasn't able to catch on quick—I can't just explain it—she was weak-minded; wasn't bright. What I mean is she had no education, and if you told her anything you had to explain it to her in different ways to make her understand it. She never at any time during all the years I knew she showed me a will. * * * Mrs. Prinz was not an educated woman. I do not state that she was of unsound mind or crazy; I can't explain just how she was, except that she was dull and slow-witted."

A neighbor lady, who had known testatrix for 47 years, visited in her home often, saw the husband drunk, and knew of his cruel treatment of testatrix, testified:

"All I can say is that he had an awful influence over her. When I went with her to the hospital that time, she was scared to death. Her husband told her that that was going to be an awful bill when she was going to have that picture taken, and she was shaking all over. I was with her in the hospital, and I know that. I did not say that Mrs. Prinz of unsound mind. She never caught on to things like others would. She was slow-witted; I guess that is what you would call it. I mean she was dull. I am not telling the court and jury that she was crazy."

Fritz Prinz, a nephew of testatrix, testified:

"From what I saw of her and heard her say, I am of the opinion that she was a weak-minded woman. I never saw her conduct any business."

A witness, who delivered whisky and beer four or five times a week for many years to the home of testatrix, testified that from his conversations and dealings with her he considered her of unsound mind.

Another witness testified to having been present and heard testatrix's second husband compel her to make beds for the dogs against her wishes to do so. In fact, her neighbors and relatives of her husband all testified to her mental weakness, to the excessive drink-

ing of her husband, to his cruel treatment of her, to her fear of him, and to the powerful influence he exerted over her. None of the relatives or close associates knew Mrs. Prinz had executed a will. She told one witness shortly before her death that she was going to make a will and that she was going to Otto Prinz, a brother of her husband, to have him help her. She went to him and told him she was going to see about her property, and did not tell him that she had executed a will or codicil. The will was left in the hands of her second husband's attorney and with her second husband's private papers. After the attorney's death his brother took charge of the papers, and wrote testatrix that he had her will; but she paid no attention to the letter, if she received it. It is true that several business men, including one witness to the will, testified that testatrix was, in their opinion, of sound mind and capable of attending to business; but the jury disregarded their testimony. The business transactions about which they testified to having with her merely related to signing her name in German to checks they filled out for her, or to small purchases of necessaries of life. She could neither read nor write. It is also true that she joined her second husband and daughters in the conveyance of a part of the 203 acres of land in Travis county; but the testimony is that her husband urged and caused the sale to be made, and that he took charge of and dissipated the proceeds of the sale. It is also true that she acted as guardian of her children from 1883 to 1889; but, beyond signing her name to the various papers, the jury could conclude from the evidence that the attorney attended to all the proceedings. It is also true that she executed a codicil to the will some 12 years after its execution; but the only living attesting witness to it said that he merely saw her at the lawyer's office, and that she did not request him to witness the instrument, and that he did not know what it was, and signed it at the request of the attorney. No issue was submitted as to whether she was induced to execute the codicil through the undue influence of appellant and his wife. She was found to be of unsound mind at the time.

In addition to the evidence detailed relating to her mental condition, it was shown that she had a brother who was insane, and that she had given birth to an idiotic child, which facts the jury had the right to consider in passing upon her mental condition.

[5] When viewed in the light of the general rules of law stated, we think the evidence detailed sufficiently supports the verdict of the jury on both the issue of mental incapacity and of undue influence as annulling the will. It shows testatrix to be a woman of weak mentality all her life, and especially so since a long time prior to the execution of the will and until her death; and many of the authorities cited by appellant relate to the issue of temporary insanity, and are not applicable here. From the evidence and the circumstances surrounding the execution of the will, the jury could have reasonably concluded that, because of ill treatment and abuse by a drunken husband, and because of her weak mental condition, testatrix had no will power to resist any demand made upon her, and that she either did not have mental capacity to know she had executed a will, or that the condition of her mind was such that she did not know its meaning and effect. The same is true as to her mental condition when she executed the codicil.

On the issue of mental incapacity, the court instructed the jury:

"Under the law, before a will can be admitted to probate, it must be proved to the satisfaction of the jury that the testatrix was of sound mind at the time she executed the will; and the burden of proof to prove said issue is upon the proponent of the instrument sought to be probated."

To this appellant made the following objection:

"Proponent objects to the court's charge on the burden of proof and the issue as to whether testatrix was of sound mind, for the reason that the same imposes upon the proponent a greater burden than is warranted or required by law."

[6] Appellant contends that to prove the issue "to the satisfaction of the jury" placed too onerous a burden upon him, and that he should have been only required to prove the issue by a preponderance of the evidence as in all civil cases. We do not sustain the contention. Article 3271, R. S. 1911, provides that:

"Before admitting a will to probate, it must be proved to the satisfaction of the court" that the testatrix "was of sound mind."

The instruction was in the language of the statute. In the recent case of Brackenridge v. Roberts, 267 S. W. 244, 270 S. W. 1001, 114 Tex. 418, the Supreme Court held the burden to be on the proponent of a will to prove by the quantum of proof required by the statute that the testator was of sound mind when he executed it. That quantum is to the "satisfaction" of the court or jury. If the statutes require a certain quantum of proof to show mental capacity to execute a will before it is entitled to be probated, which the court holds in that case it did require, then the jury should be instructed as to the quantum of proof necessary on that issue, and a charge in the language of the statute does so effectively.

The use of the word "satisfaction" in article 3271, supra, and of the word "satisfy" in article 3272, R. S. 1911, clearly indicate that the Legislature intended the matters to which they relate to be proved by that quantum of proof before a will should be entitled to pro-

bate; and, if a more onerous burden is placed upon a proponent of a will with respect to the matters referred to, the statutes show a clear intention on the part of the Legislature to impose such a burden.

[7] By numerous propositions appellant urges error in the admission of evidence of declarations of testatrix as being hearsay. We do not sustain them. The testimony was that of neighbors and relatives of testatrix's husband, to the effect that she never told them she had made a will; or that she was going to make a will and treat all her children alike; or that she sought witness' advice about her property and did not mention having executed the will or codicil. Declarations of this character have been held admissible as tending to show undue influence or as bearing on the state of mind of testator at the time. Scott v. Townsend, 166 S. W. 1138, 106 Tex. 322. The testimony that she intended to treat her children alike was admissible to show undue influence where the will showed discrimination. The testimony that she never mentioned the fact that she had made a will when discussing her property, and in talking of executing a will, was admissible to show the condition of her mind and as a circumstance that she had no knowledge of having previously made a will. Massey v. Allen (Tex. Civ. App.) 222 S. W. 682; Walker v. Irby (Tex. Civ. App.) 229 S. W. 331; Rounds v. Coleman (Tex. Civ. App.) 214 S. W. 496.

We find no error in the judgment, and it is affirmed.

Affirmed.