## HUGGINS v. MYERS et al.
### No. 12308.

Court of Civil Appeals of Texas. Fort Worth. May 3, 1930.

Rehearing Denied May 31, 1930.

566

McLean, Scott & Sayers, of Fort Worth, and Taylor, Muse & Taylor, of Wichita Falls, for appellant.

Dayton Moses, of Fort Worth, Wantland & Glasgow and Loftin & Hall, all of Henrietta, and E. H. Ratcliff, of Fort Worth, for appellees.

DUNKLIN, J.

This suit was instituted in the name of Mrs. I. I. Huggins as the alleged widow of J. L. Huggins, deceased, against W. H. Myers, the duly qualified and acting executor of the last will and testament of J. L. Huggins, deceased, and also a number of devisees and beneficiaries named in the will, to recover one-half of what was alleged to be the community estate of plaintiff and said decedent, the value of which was alleged to be $600,000.

Plaintiff's claim that she was the surviving wife of J. L. Huggins was based upon allegations of what is usually termed a "common-law marriage." It was alleged that on or about the 1st day of February, 1919, plaintiff and J. L. Huggins did by mutual consent agree to become husband and wife and in pursuance of said agreement they lived and cohabited together as husband and wife up until the time of his death, on May 6, 1928, during which time there was an accumulation of property in the name of J. L. Huggins, consisting of real estate, cattle, oil stocks, etc., of the alleged value of $600,000, all of which became the community property of plaintiff and J. L. Huggins, deceased.

The petition abounds in allegations of mutual love and affection between plaintiff and J. L. Huggins which led up to and induced them to agree to assume the relation of husband and wife, and assurances by J. L. Huggins that such a marriage would be as legal and binding as if they should procure a license and have the rites of matrimony solemnized by a minister of the gospel or some officer thereunto authorized by the statutes; that thereafter they did live and cohabit together as husband and wife openly and notoriously; and that plaintiff entered into the alleged marriage relation in perfect good faith, believing that the same was in every respect legal and binding upon both parties.

The truth of the allegations of plaintiff's petition was put in issue by proper pleadings of defendants, and upon the trial of the case it was agreed between the parties that only one issue should be submitted to the jury, and that issue was whether or not the plaintiff was lawfully married to J. L. Huggins, as alleged in her petition. In accordance with that agreement, the case went to trial.

The following was the sole issue submitted to the jury with the findings of the jury thereon: "Do you find from the evidence that there was a common law marriage entered into between plaintiff and J. L. Huggins, deceased, on or about the first day of February, 1919?" To which the answer was "no."

In connection with that issue the court gave this instruction: "To constitute a common law marriage it is necessary that the parties agree and consent to become husband and wife and thereafter carry out that agreement and live and co-habit together as husband and wife."

Upon the verdict of the jury so returned, the court rendered judgment in favor of defendants, and plaintiff has prosecuted this appeal.

The record shows that prior to plaintiff's alleged agreement to a common-law marriage with J. L. Huggins, her name was Mrs. I. I. Turner, being then the widow of W. J. Turner, to whom she was married in 1914, and who died in 1918; that at the time of the alleged agreement to a common-law marriage she was engaged in operating a hotel on Eighth avenue in the city of Fort Worth, and continued to operate it until the year 1921, when she moved to another place of residence on Eighth avenue in the city of Fort Worth, owned by her and where she has lived ever since; that during all that time J. L. Huggins controlled a ranch in Clay county, Tex., on which he resided and had resided for a number of years, and where he resided at the time of his death on May 6, 1928.

Upon the trial of the case, plaintiff was called as a witness in her own behalf, and after testifying to certain matters such as where she had resided before and after she met J. L. Huggins, her marriage with W. J. Turner, etc., she was then asked on cross-examination by defendants' counsel if she had signed a certain deed in 1925 to a man by the name of Hart in the name of Isabelle Turner,

and acknowledged the same as a "feme sole and widow," and if she did not accept in part payment of the property so conveyed to Hart some vendor's lien notes in the sum of $15,000, made payable to her as Isabelle Turner, a widow, and if she did not at the same time accept a deed of trust from Hart securing said notes in the name of Isabelle Turner, a feme sole. Whereupon plaintiff answered that she had signed a deed to some land situated in Tarrant county to Mr. Hart; that she had signed the same as a feme sole and had acknowledged the same as a feme sole, and as a widow, and that she had accepted the notes given in part payment for said land payable to Isabelle Turner, which was her name prior to the alleged marriage between her and J. L. Huggins, and that she had accepted a deed of trust to secure said notes in the name of Isabelle Turner. Whereupon plaintiff's counsel offered to prove by her the following facts:

"That she did not close said trade for said land and the said sale thereof until Mr. Huggins, her deceased husband, came and advised with her as to whether or not she should use the name of Isabelle Turner, which was her name prior to her alleged marriage to J. L. Huggins, and that he, the said J. L. Huggins, advised her to use the name of Isabelle Turner, that being her name prior to January, 1919; that for business reasons he did not want his friends at Henrietta to know that he was married; that his bank, in which he was a partner, and it being a partnership, was then heavily involved and that until that matter was settled he did not want his friends, who were in the bank with him as partners, to know that he had married and had a wife in Fort Worth. Which latter testimony was excluded by the court upon the objection of defendants, upon the ground that same was in contravention of article 3716, Revised Statutes, and the decisions thereunder, in that it related to conversations or transactions, or both, had between the plaintiff Mrs. I. I. Huggins, and the deceased, J. L. Huggins."

The deed, notes, and deed of trust referred to were also introduced in evidence by defendants, with recitals therein indicated by the answers of plaintiffs.

Another question was propounded by counsel for the defendants as follows: "Is it not a fact that you had kept and now keep a telephone number at your home in Fort Worth, Texas, under the name of Isabelle Turner?" To which the plaintiff replied in the affirmative. Whereupon the plaintiff offered to prove by the witness the reason why she did not have the telephone changed to the name of Mrs. I. I. Huggins or Mrs. J. L. Huggins was due to the fact that the deceased, J. L. Huggins, had requested her to keep the phone in her previous name, that of Isabelle Turner, in order that his friends would not learn of their marriage until he desired to make it public and then he would do so. Which testimony was excluded by the court upon the objection of defendants, upon the ground that same was in contravention of article 3716, Revised Statutes, and the decisions thereunder, in that it related to conversations or transactions, or both, had between the plaintiff, Mrs. I. I. Huggins, and the deceased, J. L. Huggins.

To each of said rulings of the court the plaintiff duly excepted, and the only assignments of error presented here are based upon those rulings, the propositions upon which the appeal is predicated being stated in appellant's brief as follows:

"1. In a suit against an executor of a deceased person by the alleged surviving common law wife, where she for the first time on cross examination was interrogated by the executor as to acts or transactions occurring during the existence of the alleged common law marriage relation in which she acted as a feme sole, or as a widow, she was thereby rendered competent, on redirect examination by her own counsel, to explain fully why she had so acted, even if such explanation involved conversations or transactions with deceased.

"2. In a suit against an executor of a deceased person by the alleged surviving common law wife, where she for the first time on cross examination was interrogated by the executor as to acts or transactions occurring during the existence of the alleged common law marriage relation in which she acted as a feme sole, or as a widow, she thereby became the witness of the executor as to such new matters opened up by the executor, and her incompetence was thereby removed as to such new matter concerning which she could, on redirect examination by her own counsel, testify fully as to all matters relevant and material to such new matters."

Appellant quotes the following excerpt from 4 Jones on Evidence, § 784: "The incompetency of the adverse party may also be removed by his being cross examined as to the transaction in question by the representative; and he is thereby rendered competent to testify to the whole of that particular transaction. The reason for this is obvious. The statute makes any person a party to or interested in the result of a suit incompetent to testify to conversations with deceased persons. But the opposite party must respect this statute himself. If he cross examines such a witness as to such conversations, so as to bring out a partial statement of any such conversations, he thereby waives the statute, and on redirect examination the witness is competent to give the whole of such conversation or qualify or explain the same."

Appellant also cites the decisions in Edwards v. White, 120 S. W. 914, by the Texarkana Court of Civil Appeals; Watson v. Dodson, 57 Tex. Civ. App. 32, 121 S. W. 209, by this court; and Reyes v. Escalera (Tex. Civ. App.) 131 S. W. 627, 629.

Without attempting to set out the facts of those three decisions, we think it sufficient to say that they are in accord with the announcement quoted above from Jones on Evidence, to the effect that, when a part of a transaction is brought out by a party who is in a position to invoke the provisions of article 3716, Revised Statutes, he thereby waives the right he would otherwise have under that statute, to object to further testimony from the same witness as to the whole transaction. The announcement in the text is but a rule of evidence under the common law.

The question presented is whether or not the testimony of the plaintiff which was excluded was a part of the respective transactions testified to by the plaintiff in answer to questions propounded by counsel for defendants; in other words, whether or not the proffered testimony of the plaintiff that J. L. Huggins advised her to make the deed to Hart and accept from him in consideration therefor vendor's lien notes and a deed of trust, all in the name of "Isabelle Turner," a "feme sole," a "widow," was a part of the transaction evidenced by those instruments. And whether or not the instructions and advice given, which plaintiff testified Huggins gave her relative to having her telephone address in the name of "Isabelle Turner," was a part of the transaction of having her name so listed in the telephone directory.

We have reached the conclusion that the alleged statements and advice so made by J. L. Huggins constituted no part of either of those transactions, and that the court did not err in sustaining the defendant's objections thereto.

Manifestly, the transactions of the plaintiff with Hart evidenced by the deed, purchase-money notes, and deed of trust to secure the same were transactions solely between plaintiff and Hart; and likewise the listing by plaintiff of her name in the telephone directory as "Isabelle Turner" was a transaction solely between her and that company. The alleged conversations with J. L. Huggins occurred prior to those transactions, and he was not even present at the time the same took place. The statements attributed to him came within the very letter of the prohibitive provisions of the statute, and they were in no manner involved in the questions of defendants' counsel relative to the transactions referred to, nor in plaintiff's answers

thereto; and they necessarily implied an oral recognition by both plaintiff and Huggins of a marital relation then existing between them, and the evident purpose of plaintiff in offering the testimony that was excluded was to prove that implied admission by Huggins of that relation.

In Austin v. Rupe (Tex. Civ. App.) 141 S. W. 547, 549, it appeared that the defendant Austin claimed a release of notes executed by him in favor of S. C. Rupe, although he did not have such notes in his possession. In the opinion in that case the following was said: "Appellant complains that the court erred 'in not permitting the defendant, Austin, when on the witness stand to explain how it came that he was not in the possession of the notes sued upon, and why they were not delivered to him at the time the release was executed, because same was proper and was in response to matters brought out by the plaintiffs.' The court refused to permit the introduction of said evidence as to the heirs, they suing as heirs of S. C. Rupe, but offered to allow it as to Mrs. Rupe, she suing in her own right. Counsel, not caring to introduce it as to Mrs. Rupe, then withdrew the question. The record shows that the testimony involved an agreement between Austin and S. C. Rupe, deceased, and was therefore illegitimate, while the matter brought out by plaintiffs involved an independent transaction between Cobb and Austin, and no part of the transaction with Rupe was inquired into. We think there was no error in excluding the testimony."

The following is quoted from the opinion in Salvini v. Salvini (Tex. Civ. App.) 2 S.W.(2d) 963, 966:

"Nor do we think the court erred in refusing to permit appellant to testify as to statements made to her by the deceased. We think the testimony falls within the provisions of article 3716, Rev. St. 1925 (Leahy v. Timon, 110 Tex. 73, 215 S. W. 951), and we do not agree with the contention of appellant that the introduction of the cross-interrogatory No. 3, in which she admitted to having made claim to be the wife of a man named Smith, and the letter from appellant to Charlie Le Gay removed the bar under the statute.

"Both cross-interrogatory No. 3 and appellant's letter to Le Gay bore on the question of the common-law marriage, but were not as to any transaction with deceased; therefore, they could in no way serve as a waiver to transactions with the deceased."

See, also, 28 R. C. L. pp. 514 to 516, and numerous decisions there cited.

For the reasons stated, the judgment of the trial court is affirmed.