**SCHELB et al. v. SPARENBERG et al.**

No. 13600.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 1, 1937.

Rehearing Denied Dec. 10, 1937.

H. S. Lattimore, of Fort Worth, for plaintiffs in error.

M. Hendricks Brown, Cantey, Hanger & McMahon, and Gillis A. Johnson, all of Fort Worth, for defendants in error.

BROWN, Justice.

Defendants in error, Charles and Russell Sparenberg, grandsons of H. Sparenberg and Johanna Sparenberg, after the death of their grandmother (their grandfather having died many years before), brought suit against their aunt, Mrs. Lizzie Schelb and her husband, who are plaintiffs in error, to establish and recover an undivided one-half interest in all property belonging to the estate of their said grandparents and also to set aside and deny the right to the probate of a certain will purported to have been executed by Mrs. Johanna Sparenberg; and the two causes, being lodged in the same district court, were consolidated and tried together.

We will designate the parties as appellants and appellees for convenience.

Trial was had to a jury and nine special issues were submitted for determination.

The first issue inquired whether or not it was the intention of H. Sparenberg, in the making of his will, to provide that whatever remained of the entire community estate at the death of his wife should descend to their two children, George Sparenberg (the father of appellees, who died prior to the time Johanna Sparenberg died) and Mrs. Lizzie Schelb, or their heirs, share and share alike. The jury found that such was his intention.

Issue No. 2 inquired whether or not Johanna Sparenberg elected to take under the terms of her husband's will. The jury found that she did.

Issue No. 3 required the jury to find whether or not checks and certificates of deposit, made payable to Mrs. Johanna Sparenberg, which were endorsed in blank by Mrs. Sparenberg between the time when she came to Fort Worth to live with Mrs. Schelb (in February 1929) and the time

of her demise, in November, 1933, were received by Mrs. Schelb for the use and benefit of Mrs. Sparenberg. The jury answered this issue in the affirmative.

Issue No. 4 required the jury to find whether or not the checks and certificates of deposit inquired about were obtained by Mrs. Schelb from Mrs. Sparenberg through undue influence exerted over her by Mr. and Mrs. Schelb. The jury answered this issue in the affirmative.

Issue No. 5 required the jury to find whether or not Mrs. Sparenberg was caused to execute the purported will by reason of undue influence exerted over her by the Schelbs. The jury answered this issue in the affirmative.

Issue No. 6 required the jury to find whether or not a certain certificate of deposit in the sum of $1,000 was delivered to Mrs. Schelb by Mrs. Sparenberg as a loan. The jury answered, "Yes."

To issue No. 7 the jury answered that at the time Mrs. Sparenberg signed the purported will she did not know the provisions and contents of the same.

To issue No. 8 the jury found that the checks which were made payable to Mrs. Sparenberg and delivered to Mrs. Schelb, between February, 1929, and November, 1933, were not gifts. And a similar finding was made to issue No. 9, which inquired about the certificates of deposit in question.

Upon this verdict, judgment was rendered for appellees against appellants, denying the will to probate and for title to and possession of one-half of the estate involved.

Being aggrieved at the judgment, Mr. and Mrs. Schelb have appealed.

We find 42 assignments of error in appellant's brief and 38 propositions urged in support of same.

The first 21 assignments of error complain of the following matters:

(1) A statement by the trial court with respect to depositions taken in behalf of both appellants and appellees.

(2) Complaint with reference to the cross-examination on the part of appellees of appellants' witness, Mrs. McCain, and the introduction of evidence to impeach such witness.

(3) Complaint of the refusal on the part of the trial court to permit appellant Mrs. Schelb, on cross-examination, to testify to transactions had with her deceased mother, and the refusal of the trial court

to permit such witness to testify to such transactions on direct examination.

(4) Complaint of the admission of certain papers in which had been wrapped Christmas presents sent by appellees to their grandmother, which were returned unclaimed and refused, and having such stamped on same.

(5) Complaint of admission in evidence of the testimony of S. H. Morrison, attorney for H. Sparenberg, concerning the instructions given to him by Mr. Sparenberg when he prepared Mr. Sparenberg's will.

A motion for a new trial was filed in the district court and none of the matters complained of in the first 21 assignments of error were incorporated in, or alluded to in, the motion for new trial.

■ Objection is made on the part of appellees to a consideration of these first 21 assignments of error, and we believe the objection is well taken.

An examination of the opinion in the case of Stillman v. Hirsch (Tex.Civ.App.) 84 S.W.2d 501, wherein a writ of error was granted by the Supreme Court and an exhaustive and able opinion written by Mr. Justice Sharp affirming the cause, will disclose that old rule 71a was not stripped of its potency by the enactment of any of the recent statutes which have caused so much controversy. This old rule, before it was amended by the Supreme Court in the spring of 1937, required that a motion for new trial should be filed in all cases where the parties desired to appeal or sue out a writ of error, unless the error complained of is fundamental, except in such cases as the statute does not require a motion for new trial. Stillman v. Hirsch, 99 S.W.2d 270.

None of the matters complained of in the first 21 assignments of error, which were not alluded to or raised in the motion for new trial in the lower court, presents fundamental error.

We do not believe that they should be considered under the holding in the authority above cited. But, if we are required to consider same, we do not find any merit in them, for the following reasons:

■ The complaint concerning the statement or instruction given by the trial court to the jury with reference to the depositions of witnesses, which had been taken by both appellants and appellees, shows that the trial court simply said to the jury: "This deposition is sworn testimony of a witness. He is testifying under oath when he gives his deposition." We fail to see how this could be construed as a comment on the weight of the evidence, and such is the complaint made. Any layman, serving as a juror, would of necessity know that a deposition is the sworn testimony of a witness and that he is testifying under oath. How appellants could have been injured by this statement of the trial court, even if the court had limited this statement or instruction to the depositions taken by appellees, we are unable to see, but the record discloses that the statement or instruction referred to all depositions taken by all parties, and, if any benefit or advantage flowed to appellees by such instruction, it likewise inured to the benefit of appellants.

■ The complaint with reference to the cross-examination of appellants' witness, Mrs. McCain, discloses that such witness was a neighbor and close friend of appellants and was in sympathy with the defenses and contentions made by the appellants and she was testifying in their behalf concerning the relationship that existed between the late Mrs. Sparenberg and appellants, and the substance of her testimony was that the treatment of Mrs. Sparenberg by appellants was practically perfect and that they did everything within their power to make her comfortable and happy.

On cross-examination appellees sought to show from this witness, and did show, that appellants would not permit the appellees, her own grandsons for whom she had expressed and shown great love and affection, to see her or communicate with her, and appellees sought to impeach, and did impeach, such witness, establishing the fact that appellants would not permit her grandsons to see Mrs. Sparenberg, and that all letters mailed by them to Mrs. Sparenberg and all packages containing Christmas presents sent to her were intercepted by appellants and returned to the senders.

The many complaints made with respect to the exclusion by the trial court of testimony given by Mrs. Schelb in answer to questions propounded to her on cross-examination disclose that perfectly legitimate questions were propounded to this appellant on cross-examination, and that in answering same she voluntarily testified to transactions had with the deceased and that appellants sought on direct examination to introduce such testimony before the court and jury.

The record discloses that appellees never waived their rights under the provisions of article 3716, Rev.Civ.Statutes; they never called Mrs. Schelb as a witness to testify to any transaction had with her deceased mother.

■ The situation presented to us and our ruling thereon is very much like, and supported by, the following authorities: Himes v. Himes, 55 S.W.2d 181, opinion by the late Chief Justice Conner of this court; Huggins v. Myers, 30 S.W.2d 565, opinion by Chief Justice Dunklin of this court; Austin v. Rupe (Tex.Civ.App.) 141 S.W. 547; Salvini v. Salvini (Tex.Civ.App.) 2 S.W.2d 963; American Exchange Nat. Bank v. Keeley (Tex.Civ.App.) 39 S.W.2d 929; Tharpe v. Schmall (Tex.Civ.App.) 44 S.W. 2d 505; and Dannenbauer v. Messerer's Estate (Tex.Civ.App.) 4 S.W.2d 620, affirmed Compton v. Dannebauer, 120 Tex. 14, 35 S.W.2d 682, 79 A.L.R. 1488.

■ The complaint with reference to the introduction in evidence of the wrappers which contained the unclaimed and refused Christmas presents sent to Mrs. Sparenberg by appellees has no merit, because such evidence was merely cumulative and was corroborative of testimony given by appellants' witness, Mrs. McCain, on cross-examination.

■ The complaint with reference to the testimony of Attorney Morrison, concerning the instructions given to him when he drew Mr. Sparenberg's will, is without merit, because a reading of the will discloses that, if same is in anywise ambiguous, the intention of the testator must be ascertained, and who is capable of testifying to such intention better than the attorney who drew the will and with whom Mr. Sparenberg discussed his intentions when the will was drawn by him? If there is no ambiguity in the will, then the intention of the party, as carried out by Mrs. Sparenberg after the death of her husband, is made plain, and such testimony complained about is harmless.

We do not find where assignments of error Nos. 12, 13, 24, 32, and 33 have either been supported by propositions or briefed by appellants, and we take it that these are not urged on the appeal.

The twenty-second assignment of error asserts that there is no evidence to support the finding on issue No. 1, and the twenty-third that the finding by the jury on such issue is against the preponderance of the evidence. We have searched the record and do not find where appellants made any objection to the charge of the court as prepared and delivered to the jury; nor do we find where any request was made by appellants for a peremptory instruction in their behalf, and it is not contended that appellants were entitled to a peremptory instruction in either or both of the consolidated cases.

■ Article 2185, Rev.Civ.Statutes, expressly provides that all objections to the charge of the court must be timely made and presented to the court before the charge is given to the jury, and that, unless this is done, all objections thereto are waived. We are of opinion that appellants cannot here be heard to raise for the first time the objection to the giving of issue No. 1, on the theory that the evidence does not support it. King v. Roberts et al., 125 Tex. 623, 84 S.W.2d 718; Port City Lumber Co. v. Markell (Tex.Civ.App.) 9 S.W.2d 449, writ dismissed; Fidelity & Guaranty Fire Corp. v. Ormand (Tex.Civ. App.) 62 S.W.2d 675, writ dismissed; Saenger v. Dallas Ry. & Terminal Co. (Tex.Civ.App.) 67 S.W.2d 351, writ refused; Bell et al. v. Mulkey (Tex.Civ.App.) 7 S.W.2d 115, affirmed (Tex.Com.App.) 16 S.W.2d 287; Ley v. Patton (Tex.Civ.App.) 81 S.W.2d 1087, writ dismissed.

In National Life & Accident Ins. Co. v. Bennett (Tex.Civ.App.) 73 S.W.2d 676, it is held that error in the charge of the court, even though it be fundamental, must be called to the court's attention, and several cases are cited to support this holding, including Gestean v. Bishop (Tex.Civ.App.) 180 S.W. 302, 181 S.W. 696.

■ We believe that Mr. Justice Hawkins, speaking for the Supreme Court in Electric Express & Baggage Co. v. Ablon, 110 Tex. 235, 218 S.W. 1030, together with the concurring opinion by Chief Justice Phillips, lays down the rule that all objections to the charge of the court are waived unless they are made in accordance with the provisions of article 2185, Rev.Civ.Statutes, and that the litigant who makes no objection to the submission of a charge, or of an issue, places himself in the position of having consented thereto, and the charge thereunder becomes his charge, and that under such circumstances a litigant cannot complain of the submission of the charge or the issue, but has the right to assign as er-

ror and make complaint that the evidence is insufficient to support the finding of the jury.

■ It would seem a rule of reason that, where a litigant makes no objection to the submission of an issue, and therefore accepts the charge as a proper one, and makes no contention that he is entitled to a peremptory instruction as to such issue, he should not be heard to say that the evidence does·not raise the issue; and it follows that, if the evidence raises such issue of fact, there must be some evidence that supports the finding made on the issue. And, under such circumstances, it would seem to be a most reasonable rule to say that a litigant, so circumstanced, cannot be heard to say that the finding has no support in the evidence.

But be that as it may, we find evidence raising the issue and the finding of the jury is supported by such evidence.

There is presented to us the twenty-third assignment of error, addressed to the finding of the jury on special issue No. 1, to the effect that such finding is against the preponderance of the evidence. We find no merit in this assignment.

The jury has answered from the evidence adduced before them and we decline to disturb the answer.

The situation which we have just outlined and detailed, with respect to special issue No. 1, we find concerning special issue No. 2. The twenty-fourth assignment of error raises the issue that there is no evidence to support the finding on same, and the twenty-fifth assignment, that the finding of the jury is against the preponderance of the evidence.

■ The identical situation occurs as to special issue No. 3 in the thirty-fourth and thirty-fifth assignments of error, and as to special issue No. 4 in the thirty-sixth and thirty-seventh assignments of error; as to special issue No. 5 in the twenty-eighth and twenty-ninth assignments of error; as to special issue No. 7 in the thirtieth and thirty-first assignments of error; as to special issue No. 8 in the thirty-eighth and thirty-ninth assignments of error; as to special issue No. 9 in the fortieth and forty-first assignments of error.

We do not find that the answers made by the jury to these issues is against the preponderance of the evidence adduced before·them.

The twenty-sixth assignment of error complains that the court erred in rendering judgment awarding appellees an undivided one-half interest in the estate of Herman Sparenberg, on the theory that the undisputed evidence shows that it was not the intention of said Sparenberg to control the entire community estate by his will, and that his surviving wife did not probate such will and accept thereunder with knowledge of any such intention on the part of her husband.

The twenty-seventh assignment of error makes complaint of such decree, on the theory that the preponderance of the evidence shows that such was not the intention of Sparenberg, and that his surviving wife did not accept under the will with knowledge of any such intention. We find that there is evidence to support both the finding made by the jury and the judgment rendered by the court as to these matters.

The forty-second assignment of error asserts that the trial court erred in rendering judgment on the verdict of the jury on the theory that the answers to issues Nos. 3 and 4 are so conflicting that they render the judgment thereon a nullity. These issues and the jury's findings thereon are as follows: ·

"Special Issue No. 3: Do you find from a preponderance of the evidence that the checks and certificates of deposits indorsed in blank by Mrs. Johanna Sparenberg between February, 1929, when she came to Fort Worth to live with her daughter, and the time of her death on November 18, 1933, were received by the defendant, Mrs. P. J. Schelb, for the use and benefit of her mother with the understanding, if any, that the taxes, insurance and upkeep on the Big Spring property would be paid out of same and the balance kept or invested for her mother? Answer: Yes.

"Special Issue No. 4: Do you find from a preponderance of the evidence that the checks and certificates of deposit inquired about in preceding interrogatories were obtained by Mrs. P. J. Schelb from Mrs. Johanna Sparenberg by reason of undue influence, if any, as herein defined to you, exerted over her by the defendants, Mr. and Mrs. P. J. Schelb? Answer: Yes."

■ We do not find any conflict in these answers, under the theory on which appellees brought the consolidated cases.

Much could be said by us, after reviewing the testimony disclosed in the statement of

facts, containing more than 1,000 pages, which furnishes ample reason and sufficient facts on which the jury could find, and did find, that the last will offered for probate as the solemn will of Mrs. Sparenberg—an old German lady well over 90 years of age, when she came to live with the appellants, who spoke English brokenly and who could not read or write English—which gave to the appellant Mrs. Schelb practically all of her estate, to the exclusion of her only other heirs, namely, her grandsons, the appellees, and which contained the peculiar provision that she left each of them $5,000, provided there happened to be that much on hand when she died, was executed by Mrs. Sparenberg while under the undue influence exerted upon her by the appellants. And let us say just here that appellants had so reduced the deceased's bank account that at the time of her death there was no $10,000 in cash to be paid to her grandsons. And further the evidence in our opinion is ample to support the findings of the jury to the effect that appellants obtained the deposit certificates and the checks made payable to the deceased through such undue influence, and that they converted the proceeds thereof to their own use and benefit.

All assignments of error are overruled and the judgment of the trial court is affirmed.

### On Motion for Rehearing.

As was pointed out by us in the original opinion the first twenty-one assignments of error relate.to (1) a statement made by the trial court concerning depositions, (2) the admission of evidence over objection thereto, and (3) the exclusion of evidence on objection.

None of these matters was raised in the motion for a new trial, but all appear for the first time in appellants' brief.

Not one case has been cited, nor do we believe one can be found, where the Supreme Court has held that such errors may be assigned for the first time in the appealing party's brief.

To so hold makes a mockery of the wholesome and established rules of practice and procedure and reduces the office of a motion for a new trial, in a jury case, to an absurdity.

We believe that Mr. Justice Sharp, speaking for the Supreme Court, in saying: "Therefore the holdings announced herein will not be enforced in cases tried before this opinion is rendered and not until the bench and the bar have a reasonable time to become familiar with same" (Stillman v. Hirsch, 99 S.W.2d 270, 276), did not intend to say that the kind of errors, presented in appellant's first 21 assignments, should be considered, when they appear, for the first time, in an appellant's brief.

But we considered these 21 assignments of error and found that they were without merit.

We note that in the motion for a rehearing the plaintiffs in error have only complained of the overruling of assignments of error Nos. 1, 3, 4, and 21, and no complaint is made of the overruling of the remaining seventeen of the first 21 assignments of error.

All of the assignments of error which touch the matter of a construction of the will made by Herman Sparenberg are wholly immaterial in the light of the findings made by the jury on the other issues raised.

If the jury had found that Johanna Sparenberg's will was valid, then, in such event, the issue of the intention of Herman Sparenberg, in the making of his will, became material to the recovery sought by the plaintiffs, but only in such event.

In the light of the jury's findings concerning Johanna Sparenberg's will and the wrongful taking, or conversion, of the certificates of bank deposits, checques, and moneys on hand (belonging to Mrs. Sparenberg) by the Schelbs, the trial court could not have rendered any judgment other than was rendered, even if the will of Herman Sparenberg ought to be construed, as is contended for by plaintiffs in error.

No complaint is made and no issue was raised tending to show that the submission of the issues concerning Herman Sparenberg's will was prejudicial to the rights of plaintiffs in error, or that same influenced, or could reasonably be said to have influenced, or prejudiced, the jury in considering the other and controlling issues submitted and answered.

As to the controlling issues presented on this appeal, we did not elaborate on the facts and circumstances adduced before the jury and on which the jury made the findings supporting the judgment. This we shall do here, to make our position clear.

It will not be contended that fraud or undue influence, in the making of a will, or concerning any other matter, is ordinar-

ily shown by what may be termed direct or positive evidence.

■■■ 44 Tex.Juris. par. 43, p. 585, dealing with will contests, says:

"The issues as to responsibility and volition on the part of the decedent are to be resolved in view of the showing as to the following facts:

"(1) Testamentary intentions of the deceased;

"(2) opportunity afforded to the alleged wrongdoer to control the decedent's act;

"(3) character and condition of the decedent;

"(4) activity on the part of the alleged wrongdoer in procuring the execution of the writing;

"(5) naturalness of the provisions of the instrument.

"While none of these facts, standing alone, is of sufficient probative force to be of decisive importance at any stage of a will contest, it has long been recognized that their evidentiary effect, in case they are shown in combination, is to create an inference or presumption against the propounded instrument. Being thus presented, the facts raise an issue for submission to the jury; and they afford support to a judgment holding the. disputed instrument not to be a valid will."

Evidence was introduced tending to show all of these matters and situations in the instant suit, the substance of which is as follows:

(1) Johanna Sparenberg's advanced age (87 years old) and the condition of her health at the time the will was executed. That she was suffering from arteriosclerosis, and her physician testified that one in her physical condition naturally suffered a disturbance of mental functions.

(2) Her inability to read or write the English language and to understand the usual terms contained in a legal instrument, and the fact that the will contained a most unusual and unnatural provision leaving $5,000 cash to each of her grandsons, conditioned upon the further fact that such amount of money was actually on deposit to her credit in a bank at her death, and the further fact that the Schelbs depleted her bank account until there was on hand, at the time of her death, only about $2,000.

(3) Her great affection for her son George, the deceased father of her two grandsons, the defendants in error, and her love for the grandsons, and her very natural feeling of a desire to do for them because their deceased father had cared so well for her business for more than 20 years, and her lack of any special obligation to her daughter, Mrs. Schelb.

(4) The fact that in February, 1926, (about 10 months before the execution of the unnatural will that is before us), she made a will in which she divided her properties equally between Mrs. Schelb and her said grandsons, and in which she named Mrs. Schelb and one of the grandsons as independent executors, and the fact that in the will executed in December, 1926 (the one here in question), she not only made no attempt at an equal division, but under the conditions found in such will left the entire estate to Mrs. Schelb; and in which instrument Mrs. Schelb was made sole, independent executrix.

(5) The fact that the will (which is before us) was a substantial copy of a handwritten draft made on December 22, 1926, wholly in the handwriting of P. J. Schelb—even the purported signature of Mrs. Sparenberg; and the further fact that Schelb exhibited such instrument to an attorney of his selection and asked the attorney if the instrument was "a good will," and the further fact that Schelb then and there told the attorney that the signature on the will was actually that of Mrs. Sparenberg, the testatrix.

(6) The fact that the handwritten instrument contained the same misspelled words that Mrs. Schelb wrote on a separate sheet of paper, which were exhibited to the jury, and the further fact that, when examined touching her part in the preparation of the handwritten will, Mrs. Schelb denied that she had anything to do with it and said: "I don't know nothing about it."

(7) The fact that Mr. Schelb wrote the said handwritten will and carried it to his personal lawyer, when there was further testimony that Mrs. Sparenberg had an aversion for Schelb and did not want him to know anything about her business.

(8) The fact that after the December, 1926, will was procured in the manner adduced before the jury, the Schelbs caused the conditional. bequest to defendants in error to fail and suffer utter defeat by withdrawing all of the money out of Johanna Sparenberg's account, and by handling such funds as were then on hand and which were later received, so that there was at the time of Mrs. Sparenberg's death only about $2,000 in cash.

(9) It was shown that after Mrs. Sparenberg concluded her visit to the Schelbs in December, 1926, and returned to her home in Big Spring, she stated: "I am so glad to get home—here I can be my own boss."

(10) It was shown that the day after the Schelbs participated in the making of the will before us they took Mrs. Sparenberg to Austin to visit these grandsons, the visit being for only one day, and that they did not let Mrs. Sparenberg out of their sight except for a brief moment, at which time Mrs. Sparenberg said, "Lizzie is jealous" (Lizzie is Mrs. Schelb); and it was further shown that after such visit and time, during the remainder of Mrs. Sparenberg's life, the Schelbs refused to permit the mother of these grandsons (defendants in error) or the grandsons to ever see their grandmother alone, and endeavored to prevent them from visiting their grandmother (who had been taken into the Schelb home to live with the Schelbs); and the further fact that the Schelbs sought to cut off all communication between the grandsons and their grandmother, and actually returned all letters and presents sent by the grandsons to their grandmother.

(11) It was further shown that after the execution of the December, 1926, will Mrs. Sparenberg never so much as mentioned the execution of same to any person, and never alluded to same in speaking with the many persons whom she had told about executing her first will—made in February, 1926.

(12) It was further shown that 2 years after the execution of the will before us Mrs. Sparenberg made statements tending to show that she did not know that she had ever executed any such document. She is shown to have said: "By golly, Pap says how our money was to go." She was referring to her deceased husband, Herman Sparenberg, whose will discloses that he desired his property, at the death of his wife, to descend to his children, and their heirs, share and share alike; and she was shown to have further said: "I will see to it my boys (meaning the grandsons) have their share."

It was further shown that when Mrs. Sparenberg died no word was sent to the grandsons, or to their mother, and no information was given any one of them of the offering of the will before us for probate. All of this unnatural secrecy, under the strange circumstances brought out in this case, and pointed out supra, was properly considered by the jury.

We hold that the evidence adduced before the jury is sufficient to sustain the findings made by the jury on every material issue presented. Russell v. Boyles (Tex.Civ. App.) 29 S.W.2d 891 (writ dismissed); Mayes v. Mayes (Tex.Civ.App.) 159 S.W. 919 (writ dismissed); Craycroft v. Crawford (Tex.Com.App.) 285 S.W. 275; Reinhardt v. Nehring (Tex.Civ.App.) 283 S.W. 347; Id. (Tex.Com.App.) 291 S.W. 873; Kelly v. Settegast, 68 Tex. 13, 2 S.W. 870; Pendell v. Apodaca et al. (Tex.Civ.App.) 221 S.W. 682.

On the matter of sufficiency of evidence to support the findings made by the jury to the issues submitted to the jury to determine whether or not the certificates of deposit were delivered to Mrs. Schelb for the use and benefit of Mrs. Sparenberg, and whether or not the checques and certificates of deposit were obtained by Mrs. Schelb through undue influence, and whether or not the checques were delivered to Mrs. Schelb as gifts, as well as the certificates of deposit, it was shown on the trial that Mrs. Sparenberg had been a most thrifty and frugal German, who, through such thrift and frugality, had built up an estate in cash and bank certificates of deposit amounting to nearly $20,000, but that, after she was taken from her home in Big Spring by the Schelbs, and moved into their home in Fort Worth, the handling of her funds and properties was taken over by the Schelbs and the funds were thereafter hurriedly dissipated; that, when Mrs. Sparenberg came to Fort Worth, she was feeble and depended upon the Schelbs to look after her deposits and collections for her, but that every rent checque was made payable to her, and, when her rental agent in Big Spring saw that these checques were endorsed in blank by her and also endorsed by the Schelbs, he sent one checque to Schelb, made payable to him, but it was returned by Schelb, who advised the rental agent that Mrs. Sparenberg wanted all checques made payable to her; and the fact that this testimony by the rental agent tends to refute the theory of the Schelbs that all this money so taken by them was actually given to them.

It was further shown that Mrs. Sparenberg at all times before she came to live with the Schelbs used her money and income, for the most part, in the repairing and upkeep of her properties, and invested

the balance for her own use. These and other facts and circumstances, such as the studied efforts on the part of the Schelbs to prevent the old lady from seeing and communicating with her grandsons, and the depletion of the moneys by the Schelbs until the conditional bequests made to the grandsons had been utterly defeated, and the fact that from 1929 until the date of Mrs. Sparenberg's death Schelb handled all of the rents, and attempted to sell the old lady's home place in Big Spring, and sold her household goods, and took over the details of the old lady's business, and the further testimony that Mrs. Sparenberg did not like Schelb and did not want him to know about or handle her affairs—all these facts and others detailed in substance, supra, support the findings made by the jury.

Holt v. Guerguin (Tex.Civ.App.) 156 S.W. 581; Id., 106 Tex. 185, 163 S.W. 10, 50 L.R.A. (N.S.) 1136; Woodbury v. Woodbury, 141 Mass. 329, 5 N.E. 275, 55 Am.Rep. 479.

We find that the jury, under the facts adduced, has rendered a just verdict, and that the evidence is sufficient to support the jury's findings.

The motion for rehearing is overruled.