# JANUARY, 1931

MRS. MARY COMPTON ET AL. V. MRS. MARGARET DANNENBAUER.

No. 5173. Decided January 21, 1931.
(35 S. W., 2d Series, 682.)

J. I. Warren and Beauchamp & Lawrence, for plaintiffs in error.

The statements of deceased regarding his will, which were made many years subsequent to its execution and more than five years subsequent to the last revoking will, are not admissible as primary evidence for any purpose; such statements are not primary evidence either of the execution, non-execution or revocation or non-revocation of a will, and can only be

admitted as secondary evidence in conjunction with other evidence at any time and for limited purposes. The statements in this case were offered as primary evidence, the sole evidence of the facts sought to be proven, and are not admissible. Tynan v. Paschal, 27 Texas, 286; Johnson v. Brown, 51 Texas, 65; Kennedy v. Upshaw, 64 Texas, 411; McElroy v Phink, 97 Texas, 147; Buchanan v. Rollins, 112 S. W., 785; Buchanan v. Rollins, 122 S. W., 962; Scott v. Townsend, 166 S. W., 1138; Throckmorton v. Holt, 180 U. S., 552; Robinson v. Stuart, 73 Texas, 267; Rankin v. Rankin, 105 Texas, 451; Underhill on Wills, para. 161; Walton v. Kendrick, 27 S. W., 872; Beard v. Shaeffer, 168 Pac., 836; Kveton v. Keding, 286 S. W., 673; Sien v. Beitel, 289 S. W., 1057; Williams v. Miles, 62 L. R. A., 343; Pickens v. Davis, 45 A. R., 322; Schouler, p. 512, sec. 412; Page on Wills, sec. 793, p. 1344; 40 Cyc., p. 1309; Waterman v. Whitney, 62 Am. Dec., 71.

*D. H. Cabeen* and *Cunningham & Lipscomb,* for defendant in error.

The court erred, over objection of proponent, in refusing to permit the witness, Margaret Dannenbauer, to answer question asked her by proponent as to declarations made by Fritz Messerer, deceased, concerning whether the will offered by proponent was his will, and as to whether he had ever made any other will. Tyan v. Paschal, 27 Texas, 286; Kennedy v. Upshaw, 64 Texas, 411; McElroy v. Phink, 97 Texas, 147; Johnson v. Brown, 51 Texas, 65; Behrens v. Behrens, 21 A. S. R., 820; Patterson v. Hickey, 32 Ga., 156; Reel v. Hawks, 9 Am. Dec., 632; Re Evans, 123 N. C., 113, 31 S. E., 267; Buchanan v. Rollings, 112 S. W., 785; Buchanan v. Rollings, 122 S. W., 962; Scott v. Townsend, 166 S. W., 1138; Brackenridge v. Robers, 267 S. W., 244; In re: Shelton, 143 N. Car. 218, 10 Am. & Eng. Ann. Cases, 531; Reel v. Reel, 9 Am. Dec., 632; In re: Carson, 17 A. L. R., 239; Miller's Will, 14 Am. & Eng. Ann. Cases, 277; Biard v. Shaffer, 168 Pac., 836; In re: Morrison's Estate, 242 Pac., 939; Throckmorton v. Holt, 180 U. S., 552.

Mr. Commissioner CRITZ delivered the opinion of the court.

The Court of Civil appeals has made a very extended and comprehensive statement of the facts and issues of this case, and in the interest of brevity we refer to the opinion of that court for a full statement. 4 S. W. (2d) 620, 622. We, however, make the following statement in order that this opinion may be complete within itself.

Fritz Messerer made a will in 1897. He died in 1927, and this will was offered for probate by Mrs. Margaret Dannenbauer, his sister. Mrs. Mary Compton, another sister, and the children of a deceased sister contested the will on the grounds of undue influence and revocation. The plea of revocation was predicated upon the alleged execution of three others wills, all after the will of 1897, and each of which is alleged to have revoked all prior wills. None of these later wills could be produced, and it was

alleged that they were lost. The case went to the district court where there was a trial before a jury, finding the issue of undue influence against the contestants. It was further found by the jury that the deceased had executed a second will in 1900 and a third will in 1919, in each of which he revoked all previous wills. The judgment refused to probate the will of 1897. The case was appealed to the Court of Civil Appeals where the judgment of the trial court was reversed and the cause remanded for a new trial on account of the rejection of certain evidence offered by the proponent regarding certain statements made by the deceased during his lifetime, but after the execution of the 1927 will and not a part of the transaction of execution.

The following statement from the opinion of the Court of Civil Appeals presents the issue:

"During the trial the proponent, Margaret Dannenbauer, was called as a witness by the contestants and was asked this question: 'Did Fritz ever tell you about writing another will?' to which she answered, 'No'. On cross-examination the witness was asked by her counsel this question: 'I will ask you if Fritz had any trouble in the way of sickness when he sent for the will?' to which the witness answered, 'Well, he was kind of sick last winter'. Counsel then said: 'I will ask you if he did not at that time tell you this was his will and that he had never made any other?' At that juncture the contestants objected to any statements made by the deceased as to the contents of the will or what he had done, and further because the witness was disqualified under the law to testify to any transactions between herself and the deceased. The objection was sus- tained. The bill of exception shows that if the witness had been per- mitted to do so, she would have answered as follows: 'Fritz Messerer had stated to her during his last sickness that this was the only will that he had ever made, and that he had never made any other.'

"Proponent's witness Henry Allen was asked the following question:

" 'Now, Mr. Allen, I will ask you to state what, if anything, Mr. Messerer said as to whether or not his will (the will offered for probate) was the only will he had written, and whether he desired to change it.'

"Contestants objected upon the ground that the testimony sought to be elicited would be hearsay, too remote, and a legal conclusion of deceased as to the effect of any instrument which he might have signed. The court sustained the objection. The bill of exceptions show that if permitted to do so, witness would have answered:

" 'Fritz Messerer stated to me at that time that the will prepared by Will Cross in 1897 was the only will that he had ever signed or attempted to execute, and that he desired his property to go according to the direc- tion of the will.'

"R. T. Lipscomb was called by the proponent as a witness, and tes- tified without objection that he visited Fritz Messerer in Honey Grove,

Tex., at his request during the early part of the year 1927. He was then asked the following question:

" 'What did he tell you, if anything, with reference to the will that is offered for probate?'

"That testimony was objected to upon the ground that it was irrelevant, immaterial, and inadmissible for any purpose, being the statement of the testator made 30 years subsequent to the making of the will offered for probate. The court stated, in effect, that he would admit the testimony upon the issue of undue influence, but would restrict it to that alone. The witness was then permitted to answer:

" 'As stated, he (Messerer) went back to the back part of his business and sat down, got this out (the will offered for probate), and handed it to me and had me read it over, and I did, and he told me that the will as it was written was the way he wanted his property to go. He told me that he wanted his property to go to his sister Mrs. Dannenbauer. He said in that connection that he had a sister, as I remember, at Denton, or at least had lived there.'

"On objection, the court refused to permit the witness to further state:

" 'That this sister at Denton, Mrs. Compton, had not been there and helped him as much as Mrs. Dannenbauer, and that there had been some claim by Mrs. Compton as to an interest in the property, and that it was his desire, and had been all along, that Mrs. Dannenbauer have all the property after his death.'

"There was other similar testimony excluded, but that which has been quoted is sufficient for a discussion of the controlling questions presented in this appeal."

At the threshold of this case we are presented with a question of jurisdiction. It is contended that this court is without jurisdiction of this case because only a question of the admissibility of evidence is presented in the application. It is true that it has been held that the Supreme Court will not grant a writ of error under subdivision 6 of article 1728, R. C. S. of Texas, 1925, as amended by Acts 1927, 40th Legislature, ch. 144, p. 214, to review a case where the bare issue of the admissibility of evidence is the only question presented, unless the evidence is decisive of the case. Browder v. Memphis Independent School District, 107 Texas, 535, 180 S. W., 1077. However, subdivision 6 of article 1728, supra, defining the jurisdiction of the Supreme Court is not intended to limit the jurisdiction of this court as defined in the five preceding subdivisions of such article, but on the other hand subdivision 6 is intended to enlarge thereon. It follows, therefore, that the Supreme Court has jurisdiction of all cases defined by the first five subdivisions of the statute, and where jurisdiction is acquired under any of the first five subdivisions it is immaterial whether the issue present questions of substantive law or not.

Article 1728, supra, so far as applicable to this case reads as follows:

"The Supreme Court shall have appellate jurisdiction co-extensive with the limits of the State, extending to all questions of law arising in the following cases when same have been brought to the Courts of Civil Appeals from final judgment of trial courts: * * *

"(2) Those in which one of the Courts of Civil Appeals holds differently from a prior decision of its own, or of another Court of Civil Appeals, or of the Supreme Court upon any question of law."

Under subdivision 2 of article 1728 above quoted, this court has jurisdiction where the writ of error is granted to settle a conflict, even though the only issue presented be one involving the admissibility of evidence. The writ in the instant case was granted for such purpose. We therefore hold that the Supreme Court has jurisdiction.

The real question presented by this appeal is whether the statements of the testator, made after the execution of the 1897 will offered for probate, such statements not being a part of the transaction of execution, to the effect that he had never made a will except the one offered for probate, could be admitted in evidence to establish or aid in establishing the contention of the proponent that the will offered had not been revoked.

We here call attention to the fact that our statute provides that a will can only be revoked by a subsequent will, codicil or declarations in writing executed with like formalities as those required for the execution of the will itself, or by the testator destroying, cancelling or obliterating the same, or causing it to be done. R. C. S. of Texas, 1925, art. 8285. In this connection it is contended that the will offered was subsequently revoked in the way and manner required by the above cited statute. There is evidence in the record of sufficient probative force, if believed by the jury, to support this contention.

In order to decide the question presented we deem it expedient to review at some length the authorities, which we shall now proceed to do.

The four leading decisions of our Supreme Court bearing on the question here presented are the cases of Tynan v. Paschal, 27 Texas, 286; Johnson v. Brown, 51 Texas, 65; Kennedy v. Upshaw, 64 Texas, 411, and McElroy v. Phink, 97 Texas, 153, 76 S. W., 753.

In Tynan v. Paschal the suit was to probate and establish a lost will. During the trial the proponent offered much testimony regarding statements made by the testator after the alleged date of the lost will, tending to support the theory of its execution. These statements were to the general effect that he had made the will; that he wanted the benficiaries named therein to have his estate, giving the reasons why; that he did not want certain other persons to have the estate, and evidencing hostility to such other persons, etc. The general trend of this testimony was to detail many statements made by the testator after the will was contended to have been executed supporting the theory of its execution.

The Supreme Court speaking through Judge Moore, fully upheld the

admissibility of the above testimony, and held that statements and declarations made by the testator after the execution of a purported lost will are admissible in evidence, but that such statements and declarations cannot within themselves, and standing alone, be of sufficient probative force to establish a fact. In other words, if evidence has been offered in the record of sufficient probative force to establish a fact, the statements and declarations of the testator may be considered by the jury for the purpose of strengthening the primary evidence. To say the least Tynan v. Paschal is certainly authority for holding the declarations and statements of the deceased, made after the execution of the will, and not a part of the transaction itself, admissible in evidence as touching the main issue in the case, that is, whether a lost will offered for probate was in effect executed by the deceased.

In Johnson v. Brown, supra, it is shown that the suit was a contest of an instrument, purporting to be the lost will and testament of J. W. Warren, deceased. The probate of the instrument was resisted by certain heirs on the ground that it was a forgery. During the progress of the trial the court admitted evidence regarding declarations of J. W. Warren, made both before and subsequent to the date of the proposed will, tending to prove his unfriendly feelings toward two of the principal beneficiaries in the will. The opinion reviews the authorities at some length and finally holds that evidence of statements made by the deceased, both before and after the purported date of execution of the will were admissible in evidence in a case where the issue in a will contest is forgery. This case cites Tynan v. Paschal and is in harmony therewith. In Tynan v. Paschal the statements of the deceased made after the date of the purported will were held admissible in aid of the probate thereof, and in Johnson v. Brown, the statements of the deceased, made both before and after the date of the purported will, were held admissible in evidence against the probate. Both of these cases involve the question as to whether the will was in fact executed, and the evidence was held admissible on that question.

In Kennedy v. Upshaw, supra, it is shown that no question was involved about the due execution of the will of one James H. Martin, which was offered for probate by appellees, but it was claimed that the codicil to said will was a forgery. During the course of the trial the proponent offered to prove by certain witnesses that they heard J. H. Martin make statements to the effect that he had not made any change in his will, or in the disposition of his property, and was not going to do so, etc., and expressing surprise that he should be asked a question with reference to such matter. It is shown that these statements were made after the purported date of the codicil, and the statements were offered in aid of the contention that the codicil was not executed and was a forgery. In passing upon the admissibility of this testimony our Supreme Court

speaking through Judge Stayton reviewed the authorities at some length and held that the testimony was not admissible. The opinion further holds in effect that statements and declarations of the deceased made after the execution of the instrument are not admissible on the issue of forgery. The opinion in this case does not refer to Tynan v. Paschal or Johnson v. Brown. In our opinion the effect of the holding in Kennedy v. Upshaw is in conflict with both of the prior cases.

In McElroy v. Phink, supra, it is shown that the matter involved a proceeding to probate the will of Mariah F. McElroy, deceased, alleged to have been lost. The probate was contested by certain heirs of the deceased. The district court admitted the will to probate. The judgment was affirmed by the Court of Civil Appeals, and the case reached the Supreme Court on writ of error. The opinion discloses the following:

"During the progress of the trial the contestant offered to prove by F. C. Vaden, 'that on the day before Mrs. McElroy left Sherman to go to Fort Worth to have an operation performed, he had a conversation with her in which, she told him that she had sent and gotten her will and that she had destroyed it, that she had burnt it up, and that she had decided not to leave her property to Silas Phink; that she was dissatisfied with the way he had treated her and with the way he was conducting himself. That she told him that Silas Phink had run through with all the property which he had gotten from the Vaden estate, and, if she and her husband were to leave him their property, he would run through with it the same way. That this conversation occurred with Mrs. McElroy while she was sick at Silas Phink's house on the day before she left to go to Fort Worth.' Counsel for the proponent objected to the testimony on the ground, 'That it was irrelevant, immaterial, hearsay, and self-serving.' The objection was sustained by the court and execption duly taken by the contestants. The ruling of the court was assigned as error in the Court of Civil Appeals and is also assigned in this court. This presents the most difficult question in the case."

The opinion then proceeds to demonstrate that there is no question in the law on which the authorities are more hopelessly in conflict than the admissibility of the testimony there and here involved. It is shown that against the admissibility of such evidence are to be found the names of Kent, Story and Livingston, while in favor thereof are to be found the names of Walworth, Ruffin, Lumbkin and Cooley. The opinion then discusses Tynan v. Paschal, Johnson v. Brown and Kennedy v. Upshaw, and calls attention to the fact that Kennedy v. Upshaw makes no allusion to either Tynan v. Paschal or Johnson v. Brown, and says that it is therefore, evident that it was not intended in Kennedy v. Upshaw to overrule either Tynan v. Paschal or Johnson v. Brown. The opinion then proceeds to hold that the evidence was admissible, and proceeds to announce the rule in harmony with Tynan v. Paschal and Johnson v. Brown. The

opinion in McElroy v. Phink does not expressly overrule Kennedy v. Upshaw, but we think the effect thereof is to do so, and to reaffirm the rule announced in the two earlier cases.

We therefore hold that the rule announced in McElroy v. Phink, Tynan v. Paschal and Johnson v. Brown is now the rule in force in this state. We are aware that very good reasons may be given for and against both rules, but we think the better reasoning supports the holding in McElroy v. Phink, and furthermore than being the last expression of our Supreme Court, should be adhered to unless some good reason can be given for overruling the same.

The views we have expressed are in harmony with the views of the Court of Civil Appeals in the instant case. It follows that the judgment of the Court of Civil Appeals which reverses the judgment of the district court and remands this case to the district court for a new trial should be affirmed.

The foregoing opinion is adopted as the opinion of the Supreme Court, and judgment will be entered in accordance therewith.

C. M. CURETON, Chief Justice.