## NOLAN v. SMITH.

No. 13233.

Court of Civil Appeals of Texas. Dallas.

Nov. 20, 1942.

Rehearing Denied Dec. 18, 1942.

Hamilton, Harrell, Hamilton & Turner and Renfro & Kilgore, all of Dallas, for appellant.

Lawrence L. Montgomery, Zellner Eldridge, and William R. Eliassof, all of Dallas, for appellee.

LOONEY, Justice.

This appeal is from a judgment of the court below, admitting to probate the lost will of Arthur A. Nolan, who died on January 27, 1940. The will was offered for probate by Mrs. Nell Nolan Smith, individually, and as independent executrix. She was the only surviving sister of the testator, and his only surviving brother, T. E. Nolan, was the contestant. The contention of proponent was that after the will was duly executed, it was left for safekeeping with Edward P. Dougherty, attorney, who wrote it and was one of the subscribing witnesses thereto; and that subsequently, the will was lost by Dougherty. The contention of the contestant was and is that after the will was left with Dougherty for safekeeping, testator obtained possession thereof, destroyed and revoked the same. If the probate of the will stands, according to its terms, Mrs. Smith and her son, Nolan Smith, will take the estate in equal shares; but if not, the estate will pass, under the law of descent and distribution, to the proponent and contestant in equal shares.

The case was submitted to a jury who found that (1) the will offered for probate was a substantial copy of the will made by Arthur A. Nolan during the year 1924; (2) that it was properly witnessed; (3) was left with Edward P. Dougherty for safekeeping; and (4) when last seen was in his custody. These findings were authorized by the evidence, in fact, conclusively established, but, in our opinion, are not controlling; the controlling issue was presented in paragraphs 5 and 6 of the charge, as follows: "Issue No. 5: Do you find from a preponderance of the evidence that Arthur A. Nolan did not destroy the will made sometime about the year 1924? If you find from a preponderance of the evidence that such will was not destroyed, let your answer be: 'The will was not destroyed.' If you do not so find, let your answer be: 'The will was destroyed.' Answer: (No answer) If you answer Special Issue No. 5 'The will was destroyed,' then answer Special Issue No. 6, otherwise do not answer Special Issue No. 6. Special Issue No. 6: Do you find from a preponderance of the evidence that such destruction, if any you have found in answer to Special Issue No. 5, was with intent to revoke such will? Answer 'Yes or No.' Answer ———." The jury, being unable to agree on an answer to Issue No. 5, made no attempt to answer No. 6; thereupon, were discharged and, on motion of the proponent, and over the objection of the contestant, judgment rendered by the court, admitting the will to probate, based as recited in the judgment, inter alia, " * * * upon the findings of the jury in response to special issues submitted to the jury, and additional considerations and findings by the

court upon the admitted and undisputed facts as are authorized by law. * * * That said last will and testament of said Arthur A. Nolan, deceased, has been lost and because same has been lost said will cannot be produced, and the court finds and is satisfied that said will cannot by any reasonable diligence be produced and found. * * * 10. * * * that said will has not been revoked by the testator Arthur A. Nolan and that it is entitled to probate." From the judgment just· recited, the contestant appealed.

Appellee moved to dismiss the appeal, (a) because appellant failed to introduce any competent evidence upon the trial in the county court, hence abandoned the contest and lost his right to appeal to the district court; and (b) because the bond filed by the appellant in appealing from the county to the district court was fatally defective and incapable of being cured by an amendment, and the amended bond filed was also defective and insufficient to confer jurisdiction upon the district court. The motion to dismiss, in our opinion, is not well taken and is overruled. A discussion of the questions raised would lengthen the opinion to no purpose.

The case has been ably and rather elaborately briefed by both sides; however, in view of the undisputed facts, the controversial area, in our opinion, is relatively narrow. As before stated, the execution of the will in question was proven and that the testator left it with Mr. Edward P. Dougherty, the attorney who drew it, for safekeeping, was last seen in his custody, and that a substantial copy was offered for probate. In view of these undisputed facts, we think the case is reduced to this inquiry, that is, whether, after being left with Mr. Dougherty for safekeeping, the will was lost by him, or was repossessed by Arthur Nolan, destroyed and revoked. The contention of appellant, in substance, is that the facts and circumstances tended to show, and would have authorized the jury to find, that after being left with Mr. Dougherty for safekeeping, the will was repossessed by the testator, destroyed, and revoked. Hence, the court erred in discharging the jury and in resolving the controverted issue as to revocation in favor of appellee, but in view of the disagreement of the jury, should have declared a mistrial.

At this point, we will notice a counter proposition urged by the appellee, to the effect that the judgment should be affirmed because appellant does not challenge the action of the court in passing upon the controverted issue, but simply challenges the power of the court to make the decision and render the judgment complained of. We do not take this view of the matter. Propositions First and Second urged by appellant, in our opinion, are germane and related to assignments numbers 43, 44, 45 and 46, contained in the motion for a new trial, wherein complaint is made over and over again that the court erred in making a finding on a controverted issue of fact in the respect mentioned.

On the other hand, appellee contends that there was no evidence even remotely tending to show that Mr. Nolan ever regained possession of his will after entrusting it to the custody of Mr. Dougherty, and that the only evidence offered to prove revocation consisted alone of naked declarations of the testator to the effect that he had destroyed his will; that such declarations standing alone, unsupported by primary evidence, were not sufficient to raise the issue of revocation, therefore, the court did not err in discharging the jury and rendering judgment for appellee on the undisputed facts.

We recognize as correct the doctrine asserted by appellee and as announced by Judge Speer, in Adams v. Houston Nat. Bank, Tex.Com.App., 1 S.W.2d 878, 879, that: "* * * The constitutional right to a jury trial does not include those cases where, under the evidence, there is no controverted issue of fact for determination. In such a case there is nothing which the court could submit to a jury, and there is therefore no error in discharging the jury previously impaneled and in rendering judgment in accordance with the undisputed facts." Also as recognized in Traders, etc., Co. v. Weatherford, Tex.Civ.App., 124 S.W.2d 423, 429, where the court said: "* * * When in any jury case, material issues necessary to support a judgment, are established conclusively by the evidence, or there is no evidence to raise a question of fact thereon, as the case may be, the court may render judgment without any verdict upon such issues. * * *" However, this rule would not apply where the unanswered issue is supported by evidence; in such a situation, the rule announced by Judge Baugh in Copeland v. Brannan, Tex. Civ.App., 70 S.W.2d 660, 662, would be controlling. He said: "There was no find-

ing of the jury on some of the material questions presented, and, having submitted these issues to the jury, and the jury not having found on them, the court was not authorized to supply such findings, nor to render judgment on the issues answered, but should have refused to accept same; and the jury should have been returned for further consideration, and, in case they could not agree on such material issues, a mistrial should have been declared. The court had no authority to render judgment on the verdict, absent any finding on a material issue submitted."

 So, the question presented is whether or not the evidence raised the issue of revocation by destruction. Mr. Edward P. Dougherty testified, in substance, that his client, Arthur A. Nolan, requested the preparation of the will in March, 1924; that witness wrote it as requested, was one of the subscribing witnesses, and that after being executed, the will was left with witness for safekeeping, but did not remember that he ever saw the will afterwards or that thereafter Nolan ever asked witness about the will, or mentioned the subject of the will. Witness found a carbon copy of the will in his desk some time afterwards, preserved merely as a form to be used in the future preparation of wills. After the death of Arthur Nolan, in January, 1940 (about 16 years after the will was executed), witness made a thorough search of his office for the will, but failed to find it, or any trace of it. In regard to the probability that the main purpose of Arthur Nolan in executing the will was to provide for his brother, Walter (a bachelor), who was in ill health, suffering from tuberculosis, Mr. Dougherty testified that he was informed by Arthur as to the bad health of his brother; that some time before the execution of the will, Walter had conveyed considerable, if not all, of his property to Arthur; that Arthur was at the time looking after Walter's interest, was much concerned about his health, and demonstrated a very affectionate regard for his brother. The provision that Arthur made in his will for his brother doubtless is worthy of consideration at this point. Paragraph two reads: "I direct my Executrix to provide for the comfortable support, care and maintenance of my brother, Walter Nolan, so long as he shall live, and to provide for him such hospital facilities, medical care and attention and nurse services as the con-

dition of his health may from time to time require, and to provide him with ample funds with which to supply his personal needs and requirements and to defray his reasonable traveling expenses; and upon the death of said Walter Nolan I direct my Executrix to pay all funeral expenses." In paragraph 3, testator left "all the rest and residue of my property of every nature and kind, real, personal, and mixed, that I may own at the time of my death," to Mrs. Nell Nolan Smith and her son, Nolan Smith, in equal shares. The record discloses that Walter Nolan died about two years after the execution of the will. Mr. Dougherty also testified that a short time before the death of Arthur Nolan, they met in a drug store; that Arthur said he didn't expect to live long, and was in a serious mood in regard to the matter, but said nothing about his will.

As to the probability of the will having been delivered to Arthur Nolan, Mr. Dougherty, testifying in the county court, was asked:

"Q. If a man comes in and asks you something while you were briefing a case and thinking about it rather seriously you would not remember it like you would if you were thinking about it—is that true? A. You are right about that.

"Q. So, it is altogether possible that something could have happened to the will and you not remember it, isn't it? A. That's possible.

"Q. And you wouldn't say it didn't happen? A. I will not."

During the period between the execution of the will in 1924 and the death of Arthur Nolan in 1940, Mr. Dougherty, leaving his desk unlocked, was absent from his office on a number of occasions for weeks and months at a time. For instance, he testified that in July, 1926, he made a trip to Europe and the Mediterranean, and was absent about 4½ months; subsequently visited Alaska, didn't remember the date, was absent about a month; also visited South America in December, 1935, was absent about 4½ months; made several trips to Mexico, absent each time about a week; was sick from October, 1933, until the spring of 1934; was out of the office during that period about one-third of the time (approximately two months); and again, the date not mentioned, made an-

other trip around the world, absent about 4½ months.

Miss Winsor, stenographer in the office of Lively & Dougherty at the time the will was executed and continuously since, testified that she typed the will as dictated by Mr. Dougherty, and, at the request of Arthur Nolan, signed same as a subscribing witness; that after signing the will as a witness, she has never seen it since; it was never placed among any files in the office; that she never lost a will or any instrument of that nature in the office, and, so far as she knew, Mr. Dougherty had never lost such an instrument; and that there was nothing in the office indicating that the will had been lost there. She also testified that, at times, she took vacations and that, during her absence, others were employed to do her work and had access to the files in the office.

From three to four years before the death of Arthur Nolan, as testified to by witnesses, he made a number of declarations, indicating that he had regained possession of the will and destroyed it. The cumulative effect of the testimony of Claude Eades, W. C. Smith, Louise Robb, D. M. Jones and Mrs. G. I. Dorman, Sr., is that Arthur Nolan stated he had once had a will but destroyed it, tore it up—that he didn't care what became of his property after death—that wills caused more trouble and lawsuits than any other one thing.

The evidence recounted above, in our opinion, tended to show, and from which the jury could have concluded, that after Arthur Nolan left his will in the custody of Mr. Dougherty, it was subsequently repossessed by the testator, destroyed, and revoked. The jury could have concluded that the impelling reason for the execution of the will was solicitude on the part of Arthur Nolan for his sick brother Walter, who had conveyed considerable if not all his property to Arthur. The meticulous provision in the will for the care of his brother is evidence of this fact; only the residue, after the trust in favor of the brother had been satisfied, was devised to the other beneficiaries. On the death of Walter, about two years later, these considerations passed away.

We also think the jury could have concluded that, in a moment of preoccupation, entirely forgotten, Mr. Dougherty could have delivered the will to Arthur Nolan; in fact, Mr. Dougherty said this could have happened. We also think the jury could have concluded that, during the absence of Mr. Dougherty from his office, Nolan regained possession of his will from Dougherty's desk. Obviously, when the will was turned over to Dougherty for safekeeping, he made some disposition of it, doubtless in the presence of Nolan. Nolan was Dougherty's client, felt at home in his office, and in seeking to repossess the will, violated neither a propriety nor the right of anyone, if, finding the office unoccupied, opened the desk drawer where probably he had seen it deposited, took the will, and later, as stated by several disinterested witnesses, destroyed it for the reasons stated.

There are cases and cases dealing with the probate of lost wills, but it is obvious that each must turn on its on peculiar facts. In the case of McElroy v. Phink, 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025, the Supreme Court, in an opinion by Gaines, C.J., held that: "Where a proposed will cannot be produced, evidence of declarations of the testatrix shortly before her death that she had destroyed it, had burnt it up, and had decided not to leave her property to the principal legatee named therein, and complaining of his treatment of her, is admissible to prove revocation." (From the Syl.) And in the body of the opinion (page 756 of 76 S.W.), the court said: "The position of the testator is very different from that of an ordinary third person, whose declarations may be offered in support of an issue upon the trial of a case. Both the proponent of the will and the contestant claim under him. As a very general rule, he best knows the facts about which he makes the statement. His will is ambulatory, and subject to be changed or revoked. No one has any right under it until his death. He has a right to make such disposition of his property as he may wish, and, as a rule, he has no interest to induce him to make a false statement about the matter." Also see 97 Tex. 147, 76 S.W. 753, 77 S.W. 1025. In the case of Buchanan v. Rollings, Tex.Civ.App. 122 S.W. 962, the declarations of the testatrix were relied upon to show that she had not revoked her will, which could not be produced at the trial, but, when last seen, was in the possession of testatrix. The Texarkana Court held that the declarations were sufficient to admit the will to probate and the Supreme Court refused a writ of error. The case

of Rape v. Cochran, Tex.Civ.App., 217 S.W. 250, is directly in point. In that case, the testatrix, Mrs. Cochran, left her estate to her daughter Emma, who, at the time, was unmarried and resided with her mother. The will was delivered to Dr. Mitchell, the family physician, for safe-keeping and was last seen in his possession. About a year prior to her death, testatrix said to her daughter-in-law that she had made a will but subsequently destroyed it, assigning as her reason that her daughter Emma, who in the meantime had married, now had a husband to make a living for her, and, further, that her husband had children whom she thought should not benefit from testatrix's estate. In answer to the issue presented, the jury found that testatrix had destroyed her will. On appeal to this court, in an opinion by Judge Rasbury, the judgment of the court below, denying probate of the will, was affirmed and a writ of error was refused. The case of Compton v. Dannenbauer, 120 Tex. 14, 35 S.W.2d 682, 685, 79 A.L.R. 1488, involved the question of whether the declarations of the decedent were admissible to prove that the lost will had not been revoked. Judge Critz, Commissioner, wrote the opinion adopted by the Supreme Court, in which, after reviewing a number of cases on the subject, expressly approved the decision in McElroy v. Phink, supra, in the following language—he said: "We therefore hold that the rule announced in McElroy v. Phink, Tynan v. Paschal [27 Tex. 286, 84 Am.Dec. 619] and Johnson v. Brown, [51 Tex.Civ. 65] is now the rule in force in this state. We are aware that very good reasons may be given for and against both rules, but we think the better reasoning supports the holding in McElroy v. Phink, and, furthermore, that being the last expression of our Supreme Court, should be adhered to, unless some good reason can be given for overruling the same." Also see 120 Tex. 14, 35 S.W.2d 682, 79 A.L.R. 1488. We are of opinion, therefore, that the court erred in not declaring a mistrial.

Appellant's assignments presented in propositions 4 and 5, complaining of the rejection of evidence, after due consideration are overruled. It follows that, in our opinion, the judgment of the court should be and hereby is reversed and judgment here rendered, declaring a mistrial and remanding the cause for further proceedings.

Reversed and remanded.