McCONNELL et al. v. SNOOK et al.

No. 12352.

Court of Civil Appeals of Texas. Galveston.

May 8, 1952.

Rehearing Denied July 24, 1952.

Fowler & Conn, Philip M. Shafer, Houston, for appellants.

C. H. Chernosky, L. A. Kucera and Robert A. Jircik, Houston, for appellees.

CODY, Justice.

This suit was instituted by Mrs. Alleine McConnell Kelley, as next friend of her half-brother, Percy D. McConnell, alleged by her to be non compos mentis, against Mrs. Evelyn Cable, a widow, seeking the cancellation of a general warranty deed dated March 22, 1946, by the terms of which the aforesaid Percy D. McConnell conveyed to Mrs. Cable, the sister of his deceased wife, Lot 1, Block 12, Washington Terrace Addition to the City of Houston, upon the consideration of $10 acknowledged to have been received and upon the further consideration of love and affection and upon the further consideration of the as-. sumption by Mrs. Cable of the indebtedness against said property amounting to about $6,000. Mrs. Kelley predicated her suit for cancellation of the deed upon two grounds, (1) want of mental capacity on the part of Percy D. McConnell, and (2) undue influence. In her petition Mrs. Kelley alleged that the value of the equity owned by Percy D. McConnell at the date of execution and delivery of the deed was $10,000 and Mrs. Kelley sought to recover the aforesaid value of the equity should the court for any reason fail or refuse to cancel the deed.

After the suit had been pending for more than a year, Mrs. Cable died testate in May, 1947, leaving as her sole legatees her daughter, Mrs. Helen Ivy Snook, who qualified as independent executrix of the last will and testament of Evelyn Cable, deceased, and John M. Brown, and Mrs. Snook, joined pro forma by her husband, and John M. Brown were substituted in said suit in lieu of their mother, Mrs. Cable. Thereafter, in 1949, Percy D. McConnell died, leaving as his heirs, under the laws of descent and distribution of Texas, Mrs. Kelley and ·certain others un-

necessary to be named hereby. By transfers Mrs. Kelley acquired whatever rights the other heirs of Percy D. McConnell might have in and to the aforesaid property.

We deem it unnecessary to give allegations of the defendants' answers other than to say that they denied the allegation of plaintiffs' petition.

At the conclusion of the evidence the court submitted the case to the jury upon a single issue. The court's charge was in no way objected to or excepted to. The special issue read as follows:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that on the 22nd day of March 1946, Percy D. McConnell did not possess sufficient mental capacity to know and understand the nature and consequence of his act in executing the deed bearing that date to Mrs. Evelyn Cable conveying the land involved in this suit? * * *"

The jury answered the foregoing special issue: "No. 1: He did have sufficient mental capacity."

The defendants moved for judgment upon the verdict, whereas plaintiff moved for judgment non obstante veredicto and to cancel the deed in question, and in the alternative, moved for judgment in the sum of $5,400. The court granted defendants' motion but rendered judgment decreeing the deed be valid and in full force and effect and that plaintiff take nothing by her suit.

The plaintiff predicates her appeal upon 11 points. The first 5 points complain of the admission of the following evidence:

(a) The declaration made by Percy D. McConnell to Dr. Skogland, a mental specialist, who, in connection with the application for the guardianship of Percy D. McConnell, examined him to determine his sanity, the declaration being, "She (referring to Mrs. Kelley) would like this place (the property in question), but I don't want them to have it. They (Mrs. Kelley and husband) were here just a few months ago. They want to get hold of this place. I don't want this to go to the Kelleys. They have never done anything for me. I have some good oil maps the Kelleys would like to get hold of. The Kelleys have taken things away from here; clothes, and sold them. They have always been trying to get the best of me ever since I have had money and I am not going to let them have it."

(b) A letter from Percy D. McConnell written from Houston, March 7, 1941, to Mrs. Cable in Florida, shortly after the death of Mrs. McConnell. In the course of the letter this statement appears, "My sister Alline Kelley at Witicha Falls, Texas, staid one day after funeral and shows no inclination to comfort or help me. But she took trunk full Ellies (the deceased Mrs. McConnell) things back with her, what I don't know—* * *."

(c) A letter from McConnell to Mrs. Cable dated March 9, 1941, in which, among other things, he stated, "I need your help at present time. big house empty * * *", and "That sweet God dam ½ sister of mine Alline Kelley, while we were in Galveston got all the papers and titles etc.; from Thayer, took home. Now when we write and wire her for them says sent back or can't find them, but wires for power of attorney to go to Tulsa and look after law suit. You know what that means. Thats not all * * *."—Here the charge is repeated that Mrs. Kelley took things belonging to his wife, and he further stated that the day after his wife's funeral Mrs. Kelley went away and left him alone.—"I am through with Alline for ever never want to see her again. It was always this way with her God I need some help * * *." —He tells Mrs. Cable that he can't stay in the house by himself much longer.—" 'You are the only one' Evelyn dear. * * *"

(d) Letter from McConnell to Mrs. Cable dated March 13, in which he writes, among other things, "Can't stay here alone want you to come to me and we will get by * * *"

(e) A duly executed will dated April 24, 1941, wherein McConnell devised everything to Mrs. Cable. In the opening paragraph of the will occur the words "being of sound mind * * *,"—the will was never offered for probate.

The foregoing evidence when offered was in each instance objected to as being hearsay, prejudicial and too remote. Evidence designated above as "(d)" was additionally objected to as being a transaction with the deceased. And the evidence designated as "(e)" was additionally objected to on the ground that the unprobated will contained the statement that McConnell was of *sound mind,* which was the very issue which it was the duty of the jury to try. The court admitted the evidence in each case for the limited purpose of showing the external manifestation of the mental condition of the said McConnell. The statements were not admitted as constituting any proof of the matters therein referred to.

The parties nowhere expressly state that the deed which plaintiff seeks to have cancelled was made in contemplation of death by Mr. McConnell. However, the deed in question did to all intents and purposes convey to Mrs. Cable all of McConnell's property. We infer from the evidence that he was about 70 years of age when his wife died and that he was about 76 or 77 when he executed the deed in question. And, by her pleadings Mrs. Kelley has attacked the validity of the deed upon the two grounds most frequently urged against the probating of the will by relatives of a testator to the end that they may inherit under the laws of descent and distribution.

■ It is inferable that the will was not offered for probate due to the fact that Mrs. Cable, who died of a cancer, predeceased Mr. McConnell. The declarations of McConnell, such as he made to the mental specialists at the time Mrs. Kelley wished to have him subjected to a guardianship, and such as were contained in his letters, were, with respect to the facts stated, hearsay. But as showing his mental condition, such evidence was direct. It was stated by Judge Phillips in Scott v. Townsend, 106 Tex. 322, 166 S.W. 1138, at page 1144, that in order to avoid the admission of purely hearsay testimony, "* * * it is but proper to require that the declarations offered to prove the mental condition of the testator be of such na-

ture as tend to reveal it by being in themselves expressive of his mental state. By the observance of this rule his declarations are permitted to perform their rightful office in the trial, but are denied use for those purposes for which they are incompetent." Again at page 1147 of 166 S.W., it was said that the testator's declarations of his feelings toward his daughter were clearly admissible.

■ The complained of declarations are not hearsay with respect to the belief of Mr. McConnell, with respect to Mrs. Kelley, however unfounded in fact they may have been. They tend to prove that he had conceived an inveterate hostility toward her about the time of his wife's death, consistent only with an intention that she should not inherit his property. The state of his feelings toward Mrs. Kelley, which his declarations tended to prove, was a legitimate subject of inquiry, and it was legitimate to establish that such feelings were of long standing. See Johnson v. Brown, 51 Tex. 65, 80; and see also Compton v. Dannenbauer, 120 Tex. 14, 35 S.W.2d 682, 79 A.L.R. 1488.

■ The plaintiff also introduced letters which she had received from Mr. McConnell in 1939 and 1940, prior to his wife's death, which showed that he then had the kindest feelings for her. Said letters were introduced only after defendants had introduced letters showing hostile feelings. We need not determine whether the declarations in those letters introduced by Mrs. Kelley were too remote in point of time. They were not objected to. But we cannot hold that the letters to Mrs. Cable were too remote, as there was evidence to show that his feelings of kindness toward her remained steadfast to the end, and that his intention to provide for her, evidenced in various letters introduced in evidence, were consummated. We need not pass on whether the introduction by plaintiff of the letters to her constituted an election to treat such character of declarations as admissible, and to waive any objection that they constituted hearsay, because in our opinion, insofar as they shed light on Mr. McConnell's beliefs and feelings—with re-

636

spect to Mrs. Kelley and Mrs. Cable—they were direct evidence.

We overrule points one to five, inclusive.

The court did not err in refusing plaintiff's motion for judgment non obstante veredicto. There was ample evidence to sustain the jury's verdict, both medical and non expert.

There was no basis in the pleadings, nor in the jury's verdict, which would have authorized the court to render a judgment for plaintiff in the sum of $5,400. And plaintiff made no objection to the submission of the single issue to the jury.

Judgment is affirmed.