**Kyle MILLER, Appellant,**

**v.**

**Kirby MILLER, et al., Appellees.**

**No. 3202.**

Court of Civil Appeals of Texas.

Eastland.

Dec. 9, 1955.

Rehearing Denied Jan. 6, 1956.

Thomas & Thomas, Big Spring, for appellant.

Charles H. Dean, Plainview, John A. Coffee, Big Spring, for appellee.

LONG, Justice.

This is a proceeding to probate the alleged lost wills of H. S. Miller and his wife, Lizzie Miller, both deceased. H. S. Miller and wife had three children, Kyle Miller, who seeks to probate said wills, Kirby Miller, and Bessie Lloyd, who oppose such probate. The main property owned by H. S. Miller and his wife consisted of three sections of land in Howard County, one

section known as the "home" section, one known as the "red barn" or "North" section, and the other known as the "creek" or "brush" section.

For some years prior to the death of Mr. and Mrs. Miller, Kyle Miller had lived on the "home" section and had erected thereon a brick house. Kirby Miller at times had lived on the "red barn" or "north" section. The Miller brothers had used the "brush" section jointly. Proponents of the wills attached to his pleadings purported copies of the alleged lost wills of Mr. and Mrs. Miller purporting to leave the home place to Kyle, the red barn place to Bessie Lloyd and the creek section to Kirby and divided the minerals on all of these sections equally between their children.

Upon a trial before the court and jury, the court, at the conclusion of the evidence offered by proponent, withdrew the case from the jury and rendered judgment refusing to admit the wills to probate. From this judgment, Kyle Miller has appealed.

By his first point, appellant contends the court erred in sustaining objection to the introduction of plaintiff's exhibits 1 and 2. Plaintiff's exhibits 1 and 2 were alleged to be carbon copies of the wills of H. S. and Lizzie Miller prepared by Clyde Thomas, an attorney of Big Spring, Texas. Mr. Thomas testified that, in 1945, he drew wills for H. S. and Lizzie Miller, according to their instructions and after having discussed the matter with them; that he drew the instruments in his office, making carbon copies thereof which he retained in his files and that exhibits 1 and 2 offered in evidence are such carbon copies; that he delivered the original instruments to H. S. Miller who told him he would get some of the "boys" in the First National Bank to witness them. The witness further testified he never saw the originals of these instruments again.

Appellant alleged in his application for the probate of the alleged lost wills that H. H. Hurt and Larson Lloyd were the subscribing witnesses thereto. Both Mr. Lloyd and Mr. Hurt testified to witnessing a will or wills for Mr. and Mrs. Miller. Both of these gentlemen were connected with the First National Bank in Big Spring. They each testified that they went to the home of Mr. and Mrs. Miller some time shortly after October, 1945, and witnessed a will or wills for the Millers. They were not clear whether it was one will and a codicil or two wills. They testified that they did not know the contents of the will or wills but that they understood that each of the Miller children was getting a section of land.

Ransom Gallaway testified that he was at one time connected with the Production Credit Company at Midland; that Kyle Miller was negotiating a loan with said company for the purpose of erecting a home on the home section of the Miller property; that as a representative of the company, he wanted to be sure that Kyle Miller would get the home section at the death of his father and mother; that Kyle Miller brought him two wills which were, in substance, the same as exhibits 1 and 2 offered in evidence; that one of said wills bore the name of H. S. Miller and H. H. Hurt and Larson Lloyd and the other contained the name of Lizzie Miller and H. H. Hurt and Larson Lloyd.

Rhoda Lemmons testified that she was working for the Production Credit Company at the time and that Kyle Miller left the wills there for several days; that she examined them carefully and that they were identical with exhibits 1 and 2. Rhoda Lemmons testified that she was familiar with the signatures of H. S. Miller and Lizzie Miller and that said wills bore the genuine signature of each.

Grover Cunningham, an attorney of Big Spring, testified to seeing these wills and that they were, in substance, the same as exhibits 1 and 2 offered in evidence.

There is evidence that appellee, Bessie Lloyd, had possession of these wills and rented a deposit box in the bank in Big Spring for the purpose of placing said wills therein. She rented the box in the name of her father and mother but she retained the key to the box.

It is clearly established by the testimony of the subscribing witnesses that Mr. and Mrs. Miller did execute a will or wills in 1945 or 1946. It was the contention of the appellant that the instruments marked exhibits 1 and 2 attached to his petition were exact copies of the wills so executed.

In Massey v. Allen, Tex.Com.App., 248 S.W. 1067, 1069, the court, after setting out the statutes governing the proof required of the due execution of a will, said:

"The statutes above set out provide no hard and fast rule as to the character or quantum of proof required to establish the due execution of a will, with the exception of the provision regulating the proof of same when the subscribing witnesses are dead. Because the statute requires certain proof to be made does not preclude the making of that proof in some manner not provided in the statutes. Article 3267, Vernon's Statutes, providing for the proof of the will in court, only furnishes a guide under the conditions stated in the statute, and using the word 'may' is a recognition of other methods of proof and of other conditions under which that statute is not applicable. Article 3271 requires certain facts to be proved to the satisfaction of the court, showing, among other things, that the testator executed the will with the formality and solemnity required by the law to make it a valid will. There is no method designated in this article of making such proof, but it is only required that it be done to the satisfaction of the court."

■ The burden was on appellant to prove the execution of the wills with the solemnity required by law but appellant was not bound to rely on the direct testimony of the attesting witnesses. Our Supreme Court, in Tynan v. Paschal, 27 Tex. 286, in discussing the introduction of secondary evidence said:

"These authorities justify the conclusion that, to establish the validity of a lost will, it is necessary to prove its execution with the formalities and solemnities prescribed by the statute; and it should be done by direct testimony, or legally deducible from such facts as are directly established. And while recourse is to be had primarily to the statutory rules governing the probate of wills yet other testimony may be used to aid or supply the deficiencies of memory of the attesting witnesses; or when direct testimony cannot be had, or the facts of the case take it without the statutory rule, resort may be had, in the first instance, to such as may be accessible and pertinent to the issue to be determined."

In Hopf v. State, 72 Tex. 281, 10 S.W. 589, 591, our Supreme Court stated as follows:

" * * * and cases may arise in which it would be the duty of a court to probate a will in opposition to the testimony of the subscribing witnesses. If from defect of memory, or from corrupt purpose, subscribing witnesses should be unable or unwilling to testify to the facts bearing on the due execution of a will, this ought not to be permitted to defeat the will, if other evidence, admissible under the ordinary rules of law to establish facts, be introduced sufficient to satisfy the court 'that the testator executed the will with the formalities and solemnities and under the circumstances required by law to make a valid will.' Cases have arisen in which wills were admitted to probate when the positive testimony of the subscribing witnesses would have defeated this."

■ It is our belief the court erred in refusing to admit exhibits 1 and 2 offered by appellant. The appellant offered other evidence which was not admitted by the court bearing upon the contents and due execution of the wills. We think the court fell into error in refusing to admit this testimony.

Appellant offered to prove by Margaret Havenel, a daughter of Kyle Miller, that in April of 1946, she had a conversation

with her grandfather and grandmother, H. S. and Lizzie Miller, in which the disposition of their property was discussed and that her grandfather said that he had seen Clyde Thomas and had made a will specifying that the home section would be her father's; that her grandmother said they wanted the home section to be her father's because he would be the only one that would live on it and that the red barn section would be Bessie's and that the creek section would be Kirby's. The witness testified that she said to her grandfather and grandmother, "Isn't the creek section the worst section?" and that they said they had let Kirby have money and that would make up the difference.

Appellant offered to prove by Sam Miller, a son of Kyle Miller, substantially the same as was offered to be proved by Margaret Havenel.

Appellant offered to prove by Kyle Miller, Jr., that in January, 1951, he discussed with his grandparents about whether his father should go ahead and build a house on the home section and they said they wanted him to build a house; they had made a will and fixed it so that his father would be the one to get the home section.

■ It is true that declarations of the testators standing alone are not sufficient to establish the due execution or the contents of an alleged lost will but such declarations made before or after the execution of the will are competent in corroboration of the main facts sought to be established. The main fact sought to be established here is that the carbon copies of the wills drawn by Clyde Thomas were copies of the wills executed by Mr. and Mrs. Miller before H. H. Hurt and Larson Lloyd as subscribing witnesses.

"Declarations of the alleged testator, before and after the supposed testamentary act, are competent in corroboration of other evidence of the main fact to which the declarations are addressed." In re Williams' Estate (Smith v. Mabry), Tex.Civ.App., 135 S.W.2d 1078, 1082. See also Bennett v. Jackson, Tex.Civ.App., 172 S.W.

2d 395; Wood v. Wood 241 Ky. 506, bauer, 120 Tex. 14, 35 S.W.2d 682, bauer, 120 Tex. 14, 35 S.W.2d 682 79 A.L.R. 1488; Texas Law of Evidence, page 533.

■ The court did not err in refusing to permit Kyle Miller, appellant, from testifying to conversations he had with his father and mother concerning the disposition they were making of their property. He was precluded from so testifying under the Dead Man's Statute, Article 3716, Vernon's Annotated Civil Statutes; Parks v. Caudle, 58 Tex. 216; Heirs of Reddin v. Smith, 65 Tex. 26; Leahy v. Timon, 110 Tex. 73, 215 S.W. 951.

■ We believe appellant offered sufficient evidence to raise fact questions for the determination of the jury and that the court erred in withdrawing the case from the jury and entering judgment refusing the probate of the alleged lost wills.

Judgment of the trial court is reversed and the cause remanded.